Leonard **KAVONIUS**, Appellant,

v.

**NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU**, Appellee.

Civ. No. 9954.

Supreme Court of North Dakota.

May 28, 1981.

---

**210**

Fintan L. Dooley, Bismarck, for appellant.

Richard J. Gross, Asst. Atty. Gen., North Dakota Workmen's Compensation Bureau, Bismarck, for appellee.

PAULSON, Justice.

Leonard Kavonius appeals from a judgment entered against him by the District Court of Burleigh County on December 3, 1980. We affirm.

On March 30, 1978, Kavonius was employed as a laborer with Jim's Ready Mix Concrete, Inc., of Bismarck. Kavonius's duties required that he use a claw hammer and a wrecking bar in order to remove plywood from basement forms. The plywood was fastened to angle iron by way of 1-inch steel rivets. As he was using the claw hammer to prize the plywood from the angle iron, a piece of a rivet broke away and struck Kavonius's left eyeball. The injury resulted in an 85 percent permanent impairment of his vision, due to the partial loss of the vision of his left eye.[1] The tragic nature of the accident was aggravated by the fact that Kavonius had amblyopia in his right eye. The amblyopia in his right eye was a longstanding condition.[2]

On April 6, 1978, Kavonius filed a claim for compensation with the North Dakota Workmen's Compensation Bureau. The Bureau made a permanent partial impairment award in accordance with § 65–05–13 of the North Dakota Century Code on No-

---

1. Prior to the injury, the visual acuity of Kavonius's left eye was 20/30, which, according to Guides to the Evaluation of Permanent Impairment published by the American Medical Association, equates to a loss of approximately 10 percent of central vision. Following the injury, the visual acuity of his left eye was 20/800, which equates to a loss of 95 percent of central vision. Thus, the injury caused an 85 percent loss of central vision in his left eye.

2. The term "amblyopia" is defined in Dorland's Illustrated Medical Dictionary (25th Ed. 1974), page 65, as "dimness of vision without detectable organic lesion of the eye".

vember 20, 1979.[3] On July 21, 1980, the Bureau issued a decision and order which upheld the award made on November 20, 1979. Kavonius then filed an appeal from the decision and order of the Bureau on August 5, 1980. In a specification of error filed with the District Court of Burleigh County on August 13, 1980, Kavonius asserted that his vision was more impaired than the Bureau's award disclosed and that his permanent partial impairment award should have been determined under § 65-05-12, N.D.C.C., which is concerned with compensation of injuries causing permanent impairment, other than scheduled injuries listed under § 65-05-13, N.D.C.C., for loss of a member. The District Court of Burleigh County entered a judgment against Kavonius on December 3, 1980, and Kavonius filed a notice of appeal from the judgment on January 6, 1981.

The sole issue presented for our consideration is whether or not the Bureau was correct in applying § 65-05-13, N.D.C.C., rather than § 65-05-12, N.D.C.C., in determining and issuing a permanent partial impairment award to Kavonius. Section 65-05-12, N.D.C.C., provides in pertinent part:

"*65-05-12. Permanent impairment— Weekly compensation—Time paid.* If the injury causes permanent impairment, *other than scheduled injuries,* as elsewhere provided for in this chapter, the percentage which such impairment bears to total impairment shall be determined, and the fund shall pay to the impaired employee a weekly compensation in the sum of forty dollars per week for the following periods: ..." [Emphasis added.]

Section 65-05-13, N.D.C.C., provides in pertinent part:

"*65-05-13. Scheduled injuries—Permanent loss of member—Weekly compensation—Time compensation payable.* If

the injury causes the loss of a member, the fund shall pay to the impaired employee a weekly compensation equal to forty dollars per week for the following periods:

.    .    .    .    .

"26.   For loss of an eye . . . . . 150 weeks.

.    .    .    .    .

"... The permanent loss of use of a thumb, finger, toe, arm, hand, foot, leg, or eye shall be considered as the equivalent of the loss of such thumb, finger, toe, arm, hand, foot, leg, or eye, and compensation for partial loss of use of said parts shall be allowed on a percentage basis. ...

"Recovery under this section shall bar an additional award of permanent impairment for the same injury, as elsewhere provided in this chapter."

Section 65-05-14, N.D.C.C., provides:

"*65-05-14. Scheduled injuries—Partial loss of use of member—Weekly compensation time—Compensation payable.* If an injury causes the impairment of a member, the sight of an eye, or the hearing in an ear which is permanent, the fund shall pay to the impaired employee a weekly compensation for that proportion of the number of weeks specified in the schedule in section 65-05-13 for the loss of such member, the sight of an eye, or the hearing in an ear, which the partial loss of the use thereof bears to the total loss of the use of such member, eye, or ear.

"Recovery under this section shall bar an additional award of permanent impairment for the same injury, as elsewhere provided in this chapter."

Kavonius contends that the impairment award issued by the Bureau should have accounted for Kavonius's total vision after the injury and should have included an

3.   The Bureau's permanent partial impairment award was $5,100 which was based upon compensation for 127.5 weeks at $40 per week. The basis for the 127.5-week figure was subsection 26 in the scheduled injuries included in § 65-05-13, N.D.C.C. Loss of an eye results in compensation payments for 150 weeks. Be-

cause the injury resulted in an 85 percent impairment of the visual acuity of the left eye, rather than a total impairment thereof, the 150-week figure contained in subsection 26 was reduced proportionately by 15 percent. Thus, 85 percent of 150 weeks is 127.5 weeks, for which compensation could be paid.

award consisting of 50 percent loss of function of the entire body. This contention would require that the Bureau's award incorporate Kavonius's preexisting vision defect of the right eye with the loss of vision of the left eye, which occurred in the accident Kavonius suffered on March 30, 1978. Kavonius contends that the injury is not a scheduled injury under § 65–05–13, N.D. C.C., but rather is an unscheduled injury under § 65–05–12, N.D.C.C., because loss of both eyes was not included as a scheduled injury under § 65–05–13. A crucial feature of Kavonius's contention is the assumption that the amblyopic defect which impaired the vision of his right eye can be equated to a previous compensable injury.

■ The assumption is erroneous because the amblyopic defect which affected the visual acuity of Kavonius's right eye was a condition which existed prior to the occurrence of the compensable injury to Kavonius's left eye and was not involved in the injury. Sections 65–05–13 and 65–05–14, N.D.C.C., specifically provide for the loss of an eye, the loss of use of an eye, or the loss of the sight of an eye. They also provide that if the loss is partial, weekly compensation is paid for the proportion of the number of weeks which the partial loss of the use of the eye bears to the total loss of use of the eye. The Bureau's award was based upon these sections and was proper. Because Kavonius's injury was a scheduled injury under § 65–05–13, N.D.C.C., Kavonius's assertion that § 65–05–12, N.D.C.C., should have been used by the Bureau to determine the amount of the permanent partial impairment award is erroneous.

■ North Dakota workmen's compensation law does not provide for special payment from a special fund for a preexisting impairment to another part of the body which affects the capacity of the total person. Rather, the question is whether or not the preexisting defect, coupled with the impairment suffered by reason of the injury—preventing Kavonius from returning to gainful employment—is covered through payment of disability benefits rather than through permanent partial impairment

awards. Kavonius argues that the theory of successive disabilities should apply here. However, the concept does not apply to the instant case where a permanent partial impairment award is made for a specific scheduled injury and the visual acuity of Kavonius's right eye was not affected by the injury to his left eye. The payment of disability benefits to Kavonius under § 65–05–09, N.D.C.C., which takes into consideration Kavonius's total vision loss, is only for the limited period in which efforts are being made to improve his physical condition. The payment of these benefits will be discontinued upon a determination that he has made a maximum adjustment.

For reasons stated in this opinion, the judgment is affirmed.

ERICKSTAD, C. J., and PEDERSON, SAND and VANDE WALLE, JJ., concur.