MASONITE CORPORATION and WAUSAU
INSURANCE COMPANIES *v.* Albert MITCHELL and
STATE TREASURER, SECOND INJURY FUND

CA 85-248                                    699 S.W.2d 409

Court of Appeals of Arkansas
Division I
Opinion delivered November 27, 1985

210

*Anderson & Kilpatrick*, by: *Joseph E. Kilpatrick, Jr.*, for appellant.

*David L. Pake*, for appellee, Second Injury Fund.

*Whetstone & Whetstone*, by: *Zan Davis*, for appellee, Mitchell.

GEORGE K. CRACRAFT, Judge. The Masonite Corporation appeals from a determination of the Arkansas Workers' Compensation Commission that the permanent total disability sustained by Albert Mitchell was not subject to apportionment pursuant to Ark. Stat. Ann. § 81-1313(i) (Supp. 1985) and in awarding an attorney's fee. We find no error.

In a hearing before the Commission Mitchell claimed that he was totally and permanently disabled as a result of a scheduled injury for which he was awarded an anatomical disability rating of 75% to the right arm below the elbow. He contended that because of other wage loss factors, particularly congenital mental retardation, he was totally disabled. The employer conceded that the anatomical disability coupled with the mental deficiency resulted in permanent total disability but contended that the Second Injury Fund should be liable for that portion of the

disability which exceeded the anatomical rating under Ark. Stat. Ann. § 81-1313(i). The Second Injury Fund contended that Mitchell was not totally and permanently disabled and, in the alternative, his mental retardation was not such an "impairment or disability" as would give rise to Second Injury Fund liability.

The Commission found that Mitchell was totally and permanently disabled but agreed with the Second Injury Fund that the congenital mental retardation was not such an impairment as would authorize apportionment. The Commission further found that the position taken by the employer was a controversion of all benefits in excess of that attributable to the anatomical rating and awarded an attorney's fee in the maximum amount allowable under the statute. This appeal followed.

The facts are not in dispute. Mitchell sustained a traumatic amputation of three fingers on his right hand in a job related accident. He was given an anatomical rating of 75% disability to his right arm. Dr. Douglas Stevens testified that Mitchell had an I.Q. of 50 and was moderately retarded. He stated that the appellee had always been a marginal worker with only the physical capacity to do unskilled manual labor and never possessed the capacity to work in any other employment. He stated that this injury made it impossible for Mitchell to return to the field in which he had been trained; rehabilitation was not indicated; the prior impairment was intellectual rather than physical and had been with him since childhood. Dr. Stevens concluded that the mental impairment coupled with his anatomical disability had effectively removed Mitchell from the job market in any employment. Masonite does not contend that this evidence does not support a finding of permanent total disability under the rule announced in *Glass* v. *Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961). It argues only that the Commission erred in holding that congenital retardation is not "a previous disability or impairment" which gives rise to a claim against the Second Injury Fund under the statute. This argument has previously been rejected in *Rooney & Travelers Ins. Co.* v. *Charles*, 262 Ark. 695, 560 S.W.2d 797 (1978) (decided under earlier apportionment statutes) and our recent opinion in *Osage Oil Company* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985).

The facts in *Charles* are similar to those in the case at bar.

There the claimant had an I.Q. of 50 as a result of congenital mental retardation. Because of this he had entered the job market as an unskilled manual laborer; and never worked in any other employment, and was working in that capacity at the time of an injury for which he was given an anatomical disability rating of 20% to the body as a whole. The Commission found that his anatomical disability coupled with his intellectual impairment resulted in permanent total disability. On appeal the employer argued that the congenital mental deficiency was not a proper work loss factor to be considered in determining total disability under *Edens*, but was a prior disability for which apportionment was indicated under then existing statutes. The Supreme Court declared that it was proper to consider congenital mental retardation as a work loss factor in determining permanent disability under *Edens* but it was not apportionable because such retardation had not been independently producing some degree of disability before the accident and had not continued to operate as a source of disability thereafter.

■■ In *Charles* our court recognized that our compensation law defines disability as "incapacity because of injury to earn in the same or any other employment the wages the employee was receiving at the time of injury." Ark. Stat. Ann. § 81-1302(e) (Repl. 1976). It reasoned that mental retardation existing at the time a worker initially enters the job market cannot constitute disability in the compensation sense because compensation entitlement is based on previous earning capacity and measured by loss of that capacity.

■ The appellant argues that *Charles* is no longer applicable. It contends that at the time it was decided the apportionment statutes used only the word "prior disability" and made no provision for a "prior impairment." It asserts that by adding "or impairment" after the word "disability" in § 4 of Act 290 of 1981 the legislature intended to make the fund liable whether or not the prior impairment was causing loss of earning capacity prior to the injury. That argument was rejected in *Osage Oil Company* v. *Rogers, supra*, where we held that the inclusion of the word "impairment" was intended only to make it clear that the first impairment did not have to be one which would be compensable under the act but rather, the definition included non-work-related ones. The test was, and is, whether or not the

prior impairment was effectively producing disability in the compensation sense (diminished earning capacity) before the accident and continued to do so afterwards.

Here, as in *Charles*, the worker entered the labor market as an unskilled manual laborer. He was following that employment without diminished earning capacity at the time of his work-related injury. There is no evidence that appellee could not have continued in the same or similar employment at the same wages he had always earned had it not been for the injury to his arm. We find no error in the Commission's conclusion that on these facts there was no Second Injury Fund liability.

Appellant next contends that the Commission erred in awarding maximum attorney fees. Ark. Stat. Ann. § 81-1332 (Supp. 1985) authorizes the Workers' Compensation Commission to order an employer or insurance company to pay legal fees of a claimant but limits such fees to the amount of compensation controverted and awarded. The employer argues that because it stipulated that Mitchell was totally disabled, its prayer that all benefits in excess of the anatomical rating be the obligation of the Second Injury Fund was not a controversion. The question of whether a claim is controverted is one of fact to be determined from the circumstances of each particular case and the Commission's finding will not be disturbed if there is substantial evidence to support it. *New Hampshire Ins. Co.* v. *Logan*, 13 Ark. App. 116, 680 S.W.2d 720 (1984). The Commission found that where the combined action of the employer and Second Injury Fund are considered, the claimant's right to benefits had been placed in jeopardy. If Mitchell had not hired an attorney, and the employer had prevailed in its contention that its liability was limited to claimant's impairment pursuant to § 81-1313(i), and the Fund had prevailed in its contention that Mitchell was not permanently and totally disabled, Mitchell's compensation award would have been limited to his scheduled disability. We conclude that there was substantial evidence to support the Commission's finding that the employer had controverted all the benefits in excess of the anatomical rating. *New Hampshire Ins. Co.* v. *Logan, supra.*

The appellant next contends that the Commission abused its discretion in awarding the maximum allowable fee in the absence of evidence of the reasonable value of the services

performed. Ark. Stat. Ann. § 81-1332 provides that in all cases where the Commission finds that a claim has been controverted it shall direct the fees for legal services be paid in addition to compensation, but such fees are limited to the amount of compensation controverted and subsequently awarded. It further provides that in determining the amount of fees the Commission shall take into consideration the nature, length and complexity of the services performed and the benefits resulting therefrom to the compensation beneficiary.

We agree that this section does not authorize the arbitrary allowance of maximum fees in every case. It specifically sets out those factors which are to be considered in arriving at a reasonable attorney's fee. The Commission has discretion in allowing attorneys' fees and may consider its own knowledge and experience in such matters. It is in a position to determine from the conduct of the hearing and the state of its own record, the nature and extent of the services and the benefits resulting to the beneficiary. Although there was no testimony as to the extent and value of the services of the attorney, the employer has not demonstrated to us from the record that the attorney in this case was not entitled to the fee allowed him, or that it was not based on the consideration of those criteria set out in the statute. We find no abuse of discretion.

Affirmed.

CORBIN and COOPER, JJ., agree.