Jim **ROBY**, Plaintiff-Respondent,

v.

**TARLTON CORPORATION and United States Fidelity and Guaranty Company, Defendants-Appellants,**

and

**Wendell Bailey, State Treasurer, as Custodian for the Second Injury Fund, Defendant-Respondent.**

No. 51466.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 10, 1987.

Motion for Rehearing and/or
Transfer Denied
April 15, 1987.

Application to Transfer Denied
May 19, 1987.

Adrian DeYong, St. Louis, for defendants-appellants.

Frank Joseph Niesen, St. Louis, for plaintiff-respondent.

William E. Roussin, Sp. Asst. Atty. Gen., St. Louis, for State Treasurer as Custodian of Second Injury Fund.

GARY M. GAERTNER, Presiding Judge.

Appellants, an employer and his insurance carrier, appeal from an order finding respondent, Jim Roby, permanently and totally disabled and entitled to disability benefits. The order was affirmed by the Labor and Industrial Relations Commission ("Commission") and the circuit court. Appellants raise three points on appeal. The first challenges the Commission's decision as being an incorrect interpretation of the law. Secondly, appellants contend that the Commission erred in not finding the Second Injury Fund ("Fund") liable for a portion of the disability award. Finally, it is argued that public policy warrants imposing liability on the Fund under the facts of this case. Having determined all points to be without merit, we affirm.

The facts are simply stated. Mr. Roby, age 47, was employed as a construction worker for the Tarlton Corporation when, on July 16, 1980, a steel beam fell and struck him on the left leg at or near the knee. He has not returned to work since the accident.

A Claim for Compensation was heard before an Administrative Law Judge ("ALJ") in 1984. The evidence showed that Mr. Roby had been steadily employed as a construction laborer for approximately 25 years prior to the accident. Mr. Roby has a wife and two children. He had not missed work, required close supervision, or suffered suspension from employment despite his limited, third-grade education or intellectual aptitude. The evidence showed that Mr. Roby cannot read or write, and he has an I.Q. of between 59 and 67, which is the range identified for the mildly mentally retarded. A rehabilitation counselor testified that rehabilitation efforts could be instituted with Mr. Roby, but the process would be lengthy and lack a favorable prognosis for success. The medical testimony from two physicians on behalf of Mr. Roby indicated physical disability of 50% of the leg at the level of the knee joint. The appellants' physician found 55% disability of the leg below the hip joint.

The ALJ concluded that Mr. Roby was permanently and totally disabled as a result of the injury to his leg on July 16, 1980. The ALJ further found that the leg injury prevented Mr. Roby from performing heavy labor. The ALJ found no evidence that Mr. Roby's preexisting low intelligence adversely affected his pre-injury employment history. Consequently, he ruled that the disability was solely attributable to the employer and his insurer, and that the Second Injury Fund was not liable. This decision was affirmed by both the Commission and circuit court.

Our review is of the Commission's decision and is limited to a determination of whether the Commission's findings are authorized by law and supported by competent and substantial evidence on the whole record. *Pulitzer Pub. Co. v. Labor & Industrial Relations Comm.*, 596 S.W.2d 413, 417 (Mo. banc 1980). We therefore examine the evidence in the light most favorable to the findings and the Commission's decision, accepting all reasonable inferences therefrom and disregarding all unfavorable evidence. *Pulitzer Pub. Co.*, 596 S.W.2d at 417. *Blissenbach v. General Motors Assembly Div.*, 650 S.W.2d 8, 11 (Mo.App., E.D.1983).

In their first point, appellants contend that the Commission's award is based on an incorrect interpretation of the law and is in contravention of the Second Injury Fund provision, § 287.220, RSMo (Cum.

Supp.1984). Appellants' interpretation of the law and statute would have us find that Mr. Roby's low intelligence constituted a preexisting industrial disability which would thereby trigger application of the Second Injury Fund.[1] We do not agree with this interpretation. It is clear from the record that Mr. Roby's 50% to 55% disability of his left leg, standing alone, was found to be the cause of his permanent and total disability. The disability award was not based on a finding that the leg injury, *coupled with* a previous industrial disability, resulted in permanent and total disability. The evidence simply did not support the conclusion that Mr. Roby's congenital low intelligence adversely affected his pre-injury work. Where the previous disability is not industrially disabling, there can be no Second Injury Fund liability. *Wilhite v. Hurd,* 411 S.W.2d 72, 77–78 (Mo. 1967). We hold that there was sufficient evidence in the record to support the Commission's decision which placed liability solely on the appellants. Point denied.

Appellants' second point alleges that the Commission's decision is based on an incorrect interpretation of Missouri case law. Specifically, it is argued that the Second Injury Fund is liable because Mr. Roby had a preexisting industrial disability (e.g., low intelligence) which was manifested by a lack of earning capacity or earning power at the time of the injury to his leg.

We do not quarrel with appellants' explication of what constitutes an industrial disability under Missouri case law.[2] In *Wilhite v. Hurd,* 411 S.W.2d 72 (Mo.1967), our supreme court first introduced the term "industrial disability." The court stated that "[t]he preexisting permanent partial disability necessary to compensation from the Second Injury Fund under Section 287.-220, V.A.M.S., relates to disability to work and means 'industrial disability' or loss of earning capacity, rather than physical impairment as such." *Id.* at 77.

A few years later, the supreme court in *Hettenhausen v. Gene Jantzen Chevrolet,* 499 S.W.2d 785 (Mo.1973), adopted with favor the *Wilhite* court's definition of the term "permanent partial disability" as meaning an "industrial disability." The *Hettenhausen* court further determined that:

> "... if the alleged 'preexisting permanent disability' did not adversely affect Claimant's partial ability to work or earning capacity, or as stated, was not an 'industrial disability,' then the combination of that condition with the disability resulting from the last compensable injury could not result in a 'combined disability,' referred to in § 287.220, greater than the degree or percentage of disability resulting from the last injury, and there would be no 'balance' for which compensation is to be paid from the Second Injury Fund."

*Id.* at 786.

Appellants direct our attention to *Kowalski v. M–G Metals and Sales, Inc.,* 631 S.W.2d 919 (Mo.App., S.D.1982), and *Stoddard v. Wilson Freight, Inc.,* 651 S.W.2d 152 (Mo.App., W.D.1983), in support of their proposition that a showing of a reduction in earning capacity or power is sufficient to trigger Second Injury Fund liability. Both cases are distinguishable from the one before us. In *Kowalski,* the court found Second Injury Fund liability based on the fact that the claimant, who sought to recover after an injury to his back, suffered from a preexisting heart condition which had caused him to lose work on a frequent basis prior to the second injury. *Id.* at 922. The *Stoddard* court also found Fund liability where it characterized the claimant's preexisting disability (a shortened right leg, severe limp, and limited

---

1. Section 287.220, RSMo (Cum.Supp.1984) provides that where a previous disability, whether from compensable injury or otherwise, and a later injury *together* result in total and permanent disability, the employer at the time of the later injury shall be liable only for the disability resulting from the last injury considered alone and of itself. (Emphasis added.)

2. The statute, § 287.220, RSMo (Cum.Supp. 1984), does not use the term "industrial disability" but refers to a "previous ... permanent partial disability." *See Wilhite v. Hurd,* 411 S.W.2d 72, 77 (Mo.1967).

range of motion in the hip from a motorcycle accident), as an industrial disability which, *when combined* with the second injury, resulted in permanent and total disability. *Id.* at 156.

In the case before us, there was no evidence that Mr. Roby suffered from a preexisting industrial disability. The record reveals that Mr. Roby's low intelligence had not been a hindrance to his ability to work nor had it affected his capacity to earn a living. The record suggests that Mr. Roby's mental deficiency was not so severe as to be clearly manifested, and that he had successfully adapted to his social and physical environment, had a steady employment history, and economically supported his family. *See American Mutual Insurance Co. of Boston v. Jones*, 426 F.2d 1263, 1268 (D.C.Cir., 1970).

Appellants also direct us to this court's decision in *Laturno v. Carnahan*, 640 S.W.2d 470 (Mo.App., E.D.1982), which affirmed the imposition of liability on the Second Injury Fund. The claimant in *Laturno* had several pre-accident disabilities, "the main one being life-long mental retardation which alone, according to expert testimony, had reduced him to doing simple manual tasks as an unskilled laborer under close supervision." *Id.* at 470. The claimant had worked for the same employer for over thirty years. The factfinder in the *Laturno* case concluded that the claimant became permanently and totally disabled " 'as a result of the pre-existing (sic) disability *combined with* the disability from this accident.' " (Emphasis added.) *Id.* at 473.

Such is not the case before us. The Commission did not find a preexisting industrial disability nor was Mr. Roby's permanent and total disability found to be the result of a combination of injuries. Rather, the injury to the leg was determined to be the sole cause of Mr. Roby's permanent and total disability. The appellants would have us find that Mr. Roby's functional illiteracy and low I.Q. renders him mentally retarded for Second Injury Fund purposes. This we cannot do under the facts presented to us. As noted earlier, prior to the leg injury, Mr. Roby held a regular job with a forty hour work week, had never been dismissed from a job for failing to follow directions or for lack of performance, and had never been dismissed or suspended for not listening to supervisors. There is no evidence upon the record to suggest that Mr. Roby's employers considered him mentally retarded in the sense of being industrially disabled.[3] Under these facts, the Commission's award is supported by substantial and competent evidence and no error of law is found. Point denied.

■ Appellants' final point alleges that, as a matter of public policy, the Second Injury Fund should be found liable for a prior disability which limits earning power or capacity. Appellants contend that the affirmation of the Commission's award would defeat the purpose of the Fund and discourage the employment of partially disabled workers. Appellants suggest that employers will interpret such a decision to mean that an employer who hires a "moderately retarded person" thereafter bears the entire burden for that person's total and permanent disability should an injury occur during the scope of employment with that employer. We do not believe that this case supports that conclusion.

The purpose of the Second Injury Fund is twofold: to encourage the employment of individuals who are already disabled; and to relieve an employer or his insurer of liability for the previously disabled employee's total and permanent disability where that disability is not specifically attributable to an injury suffered during the period of employment with that employer. *Meilves v. Morris*, 422 S.W.2d 335, 338 (Mo.1968); Slusher, *The Second Injury Fund*, 26 Mo.L.Rev. 328 (1961). We note that the Second Injury Fund is unavailable

---

**3.** *See Masonite Corp. v. Mitchell*, 16 Ark.App. 209, 699 S.W.2d 409 (1985), where the claimant's congenital mental retardation (I.Q. of 50) was held not to be an impairment or disability giving rise to Second Injury Fund liability, since claimant was working as an unskilled manual laborer without diminished earning capacity at the time of his work-related injury. *Id.* 699 S.W.2d at 411.

and inapplicable where the employee is not shown to have had a preexisting industrial disability at the time of the "second" injury. Such is that case at hand. Mr. Roby was not shown to have suffered a prior disability that impaired his earning power or capacity. *See Anderson v. Emerson Electric Co.*, 698 S.W.2d 574, 577 (Mo.App., E.D.1985). Our decision today does not affect a claimant who is truly disabled by mental retardation, as in *Laturno v. Carnahan*, 640 S.W.2d 470 (Mo.App., E.D. 1982), nor does it deny this type of claimant's employer and the employer's insurer access to the Second Injury Fund. Appellants' point is denied.

The judgment of the trial court is affirmed.

SIMON and STEPHAN, JJ., concur.