**The SECOND INJURY FUND, STATE OF TEXAS, Appellant,**

v.

**Adelina CONRAD, Appellee.**

No. 2–96–158–CV.

Court of Appeals of Texas, Fort Worth.

May 29, 1997.

Rehearing Overruled July 17, 1997.

Dan Morales, Attorney General, Jorge Vega, First Assistant Attorney General, Laquita A. Hamilton, Deputy Attorney Genral for litigation, Delmar L. Cain, Chief, Tort Litigation, Joseph A. Pitner, Assistant Attorney General, Austin, for Appellant.

Banner, Briley & White, L.L.P., Harold White, Sheri Cravens, Wichita Falls, for Appellee.

Before DAY, LIVINGSTON and RICHARDS, JJ.

## OPINION

LIVINGSTON, Justice.

### INTRODUCTION

This appeal presents the question of whether a worker who is born without a limb can receive benefits from The Second Injury Fund of Texas. The Fund challenges a jury verdict that awarded Adelina Conrad lifetime workers' compensation benefits after she lost the use of her left arm and hand as a result of a work-related injury. Because Conrad was born without a right hand or wrist, the jury found that the injury to her left arm rendered her totally and permanently disabled and that the Fund had to pay for her total and permanent incapacity. We find that because Conrad's congenital defect was a "loss" under the statute, Conrad was entitled to benefit from the Fund after she suffered a second injury.

### FACTUAL BACKGROUND

Conrad does not have a right hand or wrist because of a congenital birth defect. While working for Southwestern Bell Telephone Company as a directory assistance operator, she was diagnosed with carpal tunnel syndrome, posterior interosseous syndrome, and lateral epicondylitis in her left hand and arm. After several unsuccessful surgeries, Conrad could not go back to work, and Southwestern Bell fired her in May 1989. Conrad has been unable to work since April 1989.

Conrad filed a workers' compensation claim and settled with Southwestern Bell's workers' compensation carrier for the total loss of use of her left arm and hand. Conrad then went before the Industrial Accident Board seeking total and permanent incapacity benefits from the Fund. The Board denied her claim against the Fund.

Conrad then filed a de novo lawsuit against the Fund. The jury found that Conrad suffers from the total and permanent loss of use of her right hand as a result of a birth defect. Additionally, the jury found that Conrad suffers from the total and permanent loss of use of her left hand as a result of an occupational disease she received in the course and scope of her employment with Southwestern Bell. The trial court entered judgment in favor of Conrad for lifetime benefits.

### CLAIMS ON APPEAL

The Fund has appealed the trial court's judgment claiming that Conrad does not have standing to request or receive benefits from the Fund. The Fund bases its argument on the fact that the statute explicitly limits Fund benefits to a worker who has lost or lost the use of both hands. Thus, because Conrad never had a right hand, she could not lose or lose the use of what she never had.

The Fund also argues in the alternative that there was no or insufficient evidence of a first injury because she could not lose or lose

the use of a missing limb that was missing at birth.

Accordingly, our question becomes whether or not Conrad's congenital defect can be considered a previous loss that, when combined with her subsequent work-related injury, is compensable through the Fund.

### HISTORY AND PURPOSE OF THE FUND

In 1917, the Texas Legislature addressed the problem of how to compensate an employee when a prior injury, combined with a subsequent work-related injury, renders them more incapacitated than their subsequent injury alone would have incapacitated them by providing that:

> If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such an injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury.[1]

By enacting this provision, Texas recognized that limiting liability for second injuries would encourage employers to hire handicapped workers. *See* W. Wiley Doran, *Second Injury Fund,* 27 TEX. B.J. 231, 231 (1964).

In 1947, the legislature amended section 12c to add the Second Injury Fund to pay for the combined incapacities after a second injury occurs. The legislature also added section 12c–1:

> If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the association shall be liable only for the compensation payable for such second injury provided, however, that in addition to such compensation and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as 'Second–Injury Fund,' hereinafter defined.[2]

In 1971, the legislature amended section 12c–1 to provide that the employer was liable for *all* compensation and could then be reimbursed from the Fund.[3] However, even in the face of this change, reimbursement from the Fund was only allowed when a combination of injuries resulted in total and permanent incapacity. *See Second Injury Fund v. American Motorists Ins. Co.,* 541 S.W.2d 514, 516 (Tex.Civ.App.—Eastland 1976, writ ref'd n.r.e.); *Houston Gen. Ins. Co. v. Teague,* 531 S.W.2d 457, 459 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.). In 1977, the legislature amended section 12c–1 to provide that the association would be liable only for the compensation payable for the second injury, with the remainder for the total permanent incapacity to be paid from the Fund.[4]

In 1989, the legislature repealed section 12c–1, recodified it, and amended it to provide that the Fund would provide lifetime benefits for a worker with a "previous injury" who becomes entitled to lifetime benefits; thus, removing the "lost use" language of section 12c–1:

> If a subsequent compensable injury, together with the effects of a previous injury, results in a condition for which the injured employee is entitled to lifetime income benefits, the insurance carrier is liable for the payment of benefits for the subsequent injury only to the extent that the subsequent injury would have entitled the employee to benefits had the previous injury not existed. The subsequent injury fund shall compensate the employee for the remainder of the lifetime income bene-

---

1. Act approved March 28, 1917, 35th Leg., R.S., ch. 103, 1917 Tex. Gen. Laws 269, 278 (then codified at TEX.REV.CIV. STAT. ANN. art. 8306, § 12c).

2. Act of May 29, 1947, 50th Leg., R.S., ch. 349, § 1, 1947 Tex. Gen. Laws 690, 690–91.

3. Act of May 14, 1971, 62nd Leg., R.S., ch. 316, § 1, 1971 Tex. Gen. Laws 1257, 1257–58.

4. Act of May 28, 1977, 65th Leg., R.S., ch. 801, § 1, 1977 Tex. Gen. Laws 2004, 2005.

fits to which the employee is entitled.[5]

Finally in 1993, the legislature repealed the 1989 recodification and again recodified the second injury fund provision into the Labor Code with no substantive changes.[6]

No matter what language the legislature used—"previously lost, or lost the use" or "previous injury"—its intent was to encourage employers to hire physically disabled applicants by limiting the employers' liability when a handicapped worker is subsequently injured on the job. *See* William J. Collins III, *An Exception for Deception: Why* McKennon *Should Not Be Extended to Employment Application Misrepresentations of Pre–Existing Injuries*, 37 S. TEX. L.REV. 779, 806 n. 176 (1996); Emily A. Spieler, *Perpetuating Risk? Workers' Compensation and the Persistence of Occupational Injuries*, 31 HOUS. L.REV. 119, 201 (1994). The Texas Supreme Court stated the purpose of the Second Injury Fund was

> to encourage the employment of persons physically handicapped by previous injuries. Obviously, an employer would be discouraged from employing such persons if he knew that under the law his insurer would become liable in the event of a second injury for the disability resulting from the combined effect of the two injuries, and not merely for the disability resulting from the second injury considered alone.

*Martinez v. Second Injury Fund*, 789 S.W.2d 267, 268 (Tex.1990) (citing *Miears v. Industrial Accident Board*, 149 Tex. 270, 232 S.W.2d 671, 672 (1950)). In fact, it has been noted that the legislature's principal purpose of aiding the handicapped "has been progressively impeded, debased, or completely ignored" when the Second Injury Fund is interpreted. Thomas P. Sartwelle, *Workers' Compensation*, 32 Sw. L.J. 291, 334 (1978).

### LAW APPLICABLE TO THIS CASE

The version of the statute in effect at the time the second injury occurred will control.

*See Texas Employers' Ins. Ass'n v. Smith*, 592 S.W.2d 10, 14 (Tex.Civ.App.—Texarkana 1979, no writ). The jury found that Conrad's injury to her left hand occurred on June 1, 1989. Thus, the 1977 amendment, which was section 12c–1, controls this case.[7]

### COMPARATIVE ANALYSIS

We can find no Texas case law that addresses the specific question we are faced with today. However, Texas is not the only state with a second injury fund; so, we now turn to an analysis of how other states with second injury funds treat congenital defects.

### (1) CONGENITAL DEFECTS NOT INCLUDED

Five states have held that their second injury fund statutes do not allow apportionment when the employee's prior condition is a congenital defect.

Kentucky has consistently held that, under its statute, congenital defects or deformities are not "disease conditions" that, when aggravated, qualify for apportionment under their second injury fund. *See Young v. Wright*, 474 S.W.2d 76, 78 (Ky.1971); *Giles Indus., Inc. v. Neal*, 471 S.W.2d 5, 6 (Ky. 1971).

Based on specific statutory language that its second injury fund applies to claimants who had "previously suffered a personal injury," the Massachusetts Supreme Court held that the second injury legislation did not apply to prior congenital defects, such as a dislocation of the lens of the right eye, caused not by "injury" but by disease, toxic conditions in the mother, or transmission of an inherited characteristic. *McLean's Case*, 326 Mass. 72, 93 N.E.2d 233, 234–35 (1950).

Arkansas reached a similar result when its court of appeals held that congenital retardation and congenital dyslexia are not prior impairments or disabilities under the statute; thus, the Second Injury Fund was not liable for any of the claimants' disability. *See Hol-*

---

5. Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 4.47, 1989 Tex. Gen. Laws 46, 46 (then codified at TEX. REV. CIV. STAT. ANN. art. 8308–4.47).

6. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, §§ 1, 5, 1993 Tex. Gen. Laws 1188, 1188, 1273

(current version at TEX. LABOR CODE ANN. § 408.162 (Vernon 1996)).

7. Both parties concede that this is an "old law" case.

*ley Enters. v. Nicholls,* 19 Ark.App. 97, 717 S.W.2d 495, 496 (1986); *Masonite Corp. v. Mitchell,* 16 Ark.App. 209, 699 S.W.2d 409, 410–11 (1985). However, the same court had previously held that a permanently disabled employee with congenitally withered left extremities, who had suffered a work-related injury to his right extremities, was not limited to recovery from the employer's insurance. *See Harrison Furniture v. Chrobak,* 2 Ark.App. 364, 620 S.W.2d 955, 957–58 (1981).

In North Dakota, a claimant had a prior amblyopia, a "longstanding condition," in his right eye. He then suffered an industrial injury to his left eye. The supreme court held that North Dakota's statute did not permit payment for the resulting total disability, nor did it provide payment from a special fund in such cases. *See Kavonius v. North Dakota Workmen's Comp. Bureau,* 306 N.W.2d 209, 210, 212 (N.D.1981).

West Virginia has held, based on its statute's "caused by previous injury" language, congenital defects are not compensable from its second injury fund:

> In order to obtain workmen's compensation benefits for total disability resulting from a second injury coupled with a noncompensable definitely ascertainable physical impairment, such physical impairment must have been caused from an injury and not a disease unless such physical impairment was an occupational disease proved to have been proximately caused by employment.

*Mullins v. State Workmen's Comp. Comm'r,* 165 W.Va. 194, 271 S.E.2d 771, 771 (1980); *see also Boggs v. SWCC,* 163 W.Va. 413, 256 S.E.2d 890, 892–93 (1979); *Bannister v. State Workmen's Comp. Comm'r,* 154 W.Va. 172, 174 S.E.2d 605, 607–08 (1970). That state's supreme court has, however, questioned the equity of these results, but was constrained by statutory language. *See Boggs,* 256 S.E.2d at 893.

### (2) CONGENITAL DEFECT INCLUDED

The Supreme Court and twelve states have taken a broader view of their workers' compensation laws and have extended second injury fund benefits to congenitally handicapped workers.

Under the Longshore and Harbor Workers' Compensation Act's "disability" language, the Supreme Court has held that the cause of a worker's first injury is immaterial; thus, a congenital defect can be combined with a work-related injury to take advantage of the federal Second Injury Fund. *Lawson v. Suwanee Fruit & Steamship Co.,* 336 U.S. 198, 201–05, 69 S.Ct. 503, 504–06, 93 L.Ed. 611, 614–17 (1949); *see also Todd Pac. Shipyards Corp. v. Director, Office of Workers' Comp. Programs,* 913 F.2d 1426, 1432–33 (9th Cir.1990) (holding an employer entitled to limited liability when its employee, who suffered from the congenital defect of "subnormal intelligence," suffered a work-related knee injury that, when coupled with the congenital defect, caused the employee to be unemployable); *cf. State Comp. Ins. Fund v. Director, Office of Workers' Comp. Programs,* 818 F.2d 1424, 1426 (9th Cir.1987) (holding that illiteracy is not considered a congenital defect because it is reversible and temporary; thus, an illiterate employee does not have a prior, permanent, and partial disability).

Alaska's statute specifically includes congenital defects as a prior injury that can qualify a subsequently injured employee for second injury fund benefits. ALASKA STAT. § 23.30.205(d) (Michie 1996).

Florida takes the position that congenital defects can be "preexisting permanent impairments," but obesity has been held to not be a congenital defect absent proof that it is, indeed, congenital. *D.A. Netzel, Inc. v. Special Disability Trust Fund,* 681 So.2d 874, 875 (Fla.Dist.Ct.App.1996).

Idaho's statute limits its second injury fund's liability to a prior "abnormality or loss." The supreme court held that although a congenital condition could qualify an employee for apportionment of payments for subsequent injury between the employer and the Fund, the condition must be a subjective hindrance to employment. *See Hoye v. DAW Forest Prods., Inc.,* 125 Idaho 582, 873 P.2d 836, 840–41 (1994).

Maine's statute allows a congenital condition to be classified as a "pre-existing permanent impairment," but there must be some "loss of function" from the condition to implicate their second injury fund. *Levesque v. ACL Enters., Inc.*, 436 A.2d 877, 879–80 (Me. 1981).

Although the "pre-existing disability" must be "industrial" in Missouri, an employee "who is truly disabled by mental retardation" does have the right to benefit from the second injury fund. *Roby v. Tarlton Corp.*, 728 S.W.2d 586, 590 (Mo.Ct.App.1987) (dictum).

In a Nebraska case, an employee had a prior disability caused by having had polio as a child. At work the employee fell off a ladder, which caused him to have difficulty standing and walking; however, several witnesses testified that the employee could go back to work if he had vocational rehabilitation. The court held that the Second Injury Fund was liable for the "temporary total disability" because the employee "should not be denied compensation simply because the Workers' Compensation Court used the term 'temporary' instead of 'permanent.' " *Parker v. Saint Elizabeth Community Health Center*, 226 Neb. 526, 412 N.W.2d 469, 475 (1987).

New Mexico has held that the broad statutory meaning of "permanent physical impairment" includes congenital defects; thus, benefits awarded to a worker with a congenital defect, who suffered a second injury, can be compensated through the second injury fund. *See Fierro v. Stanley's Hardware*, 104 N.M. 411, 722 P.2d 662, 665 (Ct.App.1986).

In New York, its Workers' Commission has held

that if the man loses his second eye in an industrial accident it is immaterial how he lost his first eye. The loss of eyesight in one eye may have been congenital; it may have occurred when the child was two years old, or it may have occurred after he was grown, but not in an industrial accident. Nevertheless, at the time he loses his second eye he has suffered total disability.

*Lawson*, 336 U.S. at 205, 69 S.Ct. at 506, 93 L.Ed. at 616–17 (citing U.S. Bureau of Labor Statistics bulletin 577 at 154 (1933)).

Under Oklahoma's statute, a congenital pilonidal cyst renders an employee a "physically impaired person"; thus, the employee can apply to the Special Indemnity Fund for contribution. *Special Indemnity Fund v. Scott*, 652 P.2d 278, 280 (Okla.1982).[8]

Tennessee holds that an employee who was blind in one eye either from birth or from childhood and then suffered an injury that caused blindness to the other eye could recover from the Second Injury Fund. The supreme court found that the statute's use of the word "disability" covered the former blindness; however, the court noted that if the statute still used the word "injury," instead of "disability," the Fund would not have applied. *Giles County v. Rainey*, 195 Tenn. 239, 258 S.W.2d 774, 776 (1953).

Utah has held that, under its statute, it was immaterial that a claimant's prior condition was the result of a congenital defect; all that was germane was that the prior impairment be of a physical quality capable of independently producing some degree of disability. *See United States Fidelity & Guar. Co. v. Industrial Comm'n of Utah*, 657 P.2d 764, 767 (Utah 1983).

Finally, a former Chairman of the Wisconsin Commission concluded that

Wisconsin takes no account of where the injured man may have gotten his first injury. It makes no difference where he got it. It is just as serious to him, when he has the second injury, as if he had gotten the first one in industry.

*Lawson*, 336 U.S. at 204, 69 S.Ct. at 506, 93 L.Ed. at 616 (citing U.S. Bureau of Labor Statistics bulletin 577 at 157–58 (1933)).

## Discussion

We realize that any statutory definitions must be given effect and that ordinary mean-

---

8. *Scott* was decided under the version of the statute that allowed recovery for injury to "any part of the body." However, the statute was narrowed to only cover "major members"; thus, congenital defects must now be to a major member. *Special Indemnity Fund v. Figgins*, 831 P.2d 1379, 1384 (Okla.1992).

ings should be applied only to undefined terms. *See Tijerina v. City of Tyler,* 846 S.W.2d 825, 827 (Tex.1992). In this case, the legislature has not defined "loss or loss of use." However, we may presume that the legislature intended:

▶ compliance with the United States and Texas Constitutions;

▶ effectiveness of the entire statute;

▶ a just and reasonable result;

▶ a result that makes application of the statute possible; and

▶ a preference of public interest over private interest.

*See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988).

Loss is defined in one source as the "detriment or disadvantage from failure to keep, have, or get." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 847 (1973). However, Black's Law Dictionary goes even further and states:

> Loss is a generic and relative term.... [I]t is not a word of limited, hard and fast meaning....
>
> ....
>
> ... Loss of member or loss of an entire member means destruction of usefulness of member or entire member for purposes to which in its normal condition it is susceptible of application, in absence of more specific definition. Loss of use of hand means substantial and material impairment of use in practical performance of its function. Loss of use of member is equivalent to loss of member....

BLACK'S LAW DICTIONARY 945 (6th ed.1990). Although "loss" in some sense seems to imply that one cannot lose what one did not have, the fact that at least one dictionary includes "failure to have" in its definition supports our finding that "loss" includes the situation where a person is born without a hand or wrist. To hold otherwise would be to impermissibly take a "hard and fast" view of the word "loss."

Additionally, based on the intent of the statute, differentiating between disabilities that an employee has at birth and disabilities that an employee suffers during childhood is arbitrary and not justifiable. *Cf. State v. Mireles,* 838 S.W.2d 285, 286–87 (Tex.App.—Dallas 1992, writ denied) (holding that employee who lost vision in his left eye in *childhood* accident could receive benefits from the Fund). "A distinction between a worker previously injured in industry and one handicapped by a cause outside of industry has no logical foundation if we accept the premise that the purpose of the fund is that of aid to the handicapped." *Lawson,* 336 U.S. at 204, 69 S.Ct. at 506, 93 L.Ed. at 616. This result would deprive a considerable class of handicapped workers of the benefits of the Fund. In the absence of specific statutory language, e.g., Massachusetts's "previously suffered a personal injury," such a distinction is not warranted.[9]

Texas's "loss or loss of use" language does not seem to exclude congenital defects from qualifying for benefits from the Fund. The Fund asks us to draw a bright line and hold that an employee can only have loss of use of an *existing* limb; thus, because Conrad never had a hand and wrist, she did not suffer a loss. Such a demarcation is unworkable and entirely too narrow an interpretation of undefined statutory language. For example in its brief, the Fund referred to Conrad's birth defect as a "total and permanent *loss.*" [Emphasis added.] At oral argument, the Fund again stated that Conrad's missing right hand and wrist was a "congenital *loss.*" [Emphasis added.] Finding that Conrad's birth defect is not a "loss" as used in the statute, when the Fund itself uses the word to describe her condition, shows how unworkable such a narrow interpretation of "loss" would be.

### CONCLUSION

Accordingly, we hold that a congenital defect to a member listed in former section 12c–1, when coupled with a work-related injury that causes the employee to be permanently disabled, qualifies the employee for

---

9. We, of course, do not decide whether the language of current section 408.162, i.e., together "with the effects of a previous injury," applies to

a congenital defect. TEX. LABOR CODE ANN. § 408.162 (Vernon 1996).

Fund benefits. A listed member does not have to be existing at some point in the employee's life in order to be considered "lost." This is the interpretation that effectuates the intent of the statute to aid the handicapped and is in the best interest of the public. *See Industrial Acc. Bd. v. Parker*, 348 S.W.2d 188, 191 (Tex.Civ.App.—Texarkana 1960, writ ref'd n.r.e.) (op. on reh'g) ("[T]he interpretation most beneficial to injured employees and which will best promote the purposes of the act [to benefit and protect injured employees] will be employed.").

We overrule the Fund's points attacking Conrad's standing. We also overrule the Fund's point claiming there is no or insufficient evidence of a qualifying first injury. This claim is based on the Fund's premise that Conrad could not, under the statute, lose what she never had. Because we have held that Conrad did suffer a "loss" under the statute, we also overrule this point.

We affirm the judgment of the trial court.