## ROBERT S. McLEAN'S CASE.

Suffolk. May 1, 2, 1950. — June 5, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Workmen's Compensation Act,* Special fund; Procedure: parties, appeal. *Treasurer and Receiver General. Words,* "Injury."

A finding by the Industrial Accident Board, that an employee, who suffered a compensable injury to his left eye, "previously" had "suffered a personal injury" to his right eye of a character requiring the Treasurer and Receiver General under §§ 37, 65, of the workmen's compensation act, as amended, to contribute from the special fund toward compensation paid him, was not warranted where it appeared that before the left eye was injured the vision in the right eye was permanently less than twenty seventieths, not correctable with glasses, due to congenital dislocation of the lens, and the only evidence relating to the cause of the condition of the right eye was testimony of a medical expert which went no farther than an expression of opinion that the dislocation of the lens was caused by the absence of some of the fibres which normally hold the lens in place and that "the absence of the fibres may be due to disease, toxic conditions in the mother, and it may be a transmitted characteristic from parents to child."

The Treasurer and Receiver General is a party in interest in proceedings under the workmen's compensation act before the Industrial Accident Board and in the Superior Court respecting contribution from the special fund toward compensation in the circumstances described in §§ 37, 65, of the act, as amended, and is entitled to appeal to this court from a decree of the Superior Court ordering him to make such contribution.

CERTIFICATION to the Superior Court of a decision of the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Dowd,* J.

*J. J. Bresnahan,* Assistant Attorney General, for the Treasurer and Receiver General.

*C. T. Sexton, (M. J. Aldrich* with him,) for the insurer.

WILLIAMS, J. This is an appeal by the Treasurer and Receiver General from a decree of the Superior Court ordering the appellant to reimburse the insurer for compensation

paid by the insurer to the employee and to pay weekly compensation to the employee from the date of the decree in accordance with the terms of the compensation act. The agreed facts, which were adopted by the reviewing board, indicate that the employee suffered a compensable injury on January 3, 1947, while working for The Gamewell Company, by reason of which the retina of his left eye became detached. At the time he began work with The Gamewell Company, his vision in his right eye was less than twenty seventieths, not correctable with glasses. This loss of vision in the right eye was due to congenital dislocation of the lens, was permanent, and represented loss of use of said eye for industrial purposes. The insurer executed an agreement with the employee for the payment of compensation for the injury of January 3, 1947, the former reserving "carrier's [*sic*] rights" under § 37 of the act. On the joint petition of the insurer and the Attorney General the foregoing facts were reported by the single member to the reviewing board for its determination and decision as to the liability of the Commonwealth to contribute to the compensation payable under §§ 37 and 65 of the act. The board ordered the Treasurer under the provisions of these sections to reimburse the insurer for one half of the payments made by it and in the future to pay one half of the compensation to which the employee was entitled. On certification to the Superior Court, the decree was entered from which the present appeal was taken.

The principal question presented is whether the employee is one who has "previously suffered a personal injury" under the provisions of § 37, as amended by St. 1937, c. 321. By this section, whenever "an employee who has previously suffered a personal injury resulting in . . . the reduction to twenty seventieths of normal vision of one eye with glasses, incurs further disability by . . . the reduction to twenty seventieths of normal vision in an eye, by reason of a personal injury for which compensation is required by this chapter, he, or his dependent, if death results from the injury, shall be paid the compensation provided for by

sections thirty-one, thirty-two, thirty-four, thirty-four A or thirty-five, in the following manner: One half of such compensation shall be paid by the state treasurer from the fund established by section sixty-five, and the other half by the insurer, but the additional compensation required by section thirty-six shall be paid by the insurer." There is provision in § 65, as appearing in St. 1939, c. 465, § 3, and as amended, for the creation of a special fund in the custody of the State Treasurer "who shall make payments therefrom upon the written order of the department for the purposes set forth in section thirty-seven." If the defect in the employee's right eye is due to a personal injury previously suffered, it is the Treasurer's duty, on order of the department, to pay from this special fund one half of the compensation payable to the employee; if not due to a previous personal injury, the insurer must pay the entire compensation. Statute 1919, c. 272, §§ 1 and 2, now G. L. (Ter. Ed.) c. 152, §§ 65 and 37, was passed by the Legislature in 1919 after the decision in *Branconnier's Case* (1916), 223 Mass. 273, which held that an insurer was liable to provide compensation for the total incapacity of an employee due to loss of an eye after he had previously lost his other eye. The purpose of the statute was to encourage the employment of persons who have previously suffered certain defined personal injuries by relieving the employer or the insurer from the burden of paying the entire compensation for further disability of the employee due to the combined effect of his previous injury and one later received in the course of his employment. *Fallon's Case*, 322 Mass. 61, 62–63. *Hebron's Case*, 247 Mass. 427, 430. It was said in *Burns's Case*, 218 Mass. 8, 12, "In common speech the word 'injury,' as applied to a personal injury to a human being, includes whatever . . . change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability." If we assume that a personal injury, as so defined and as the term is employed in § 37, includes an injury to the foetus previous to birth, which we do not intimate (see *Dietrich* v. *Northampton*, 138 Mass. 14), there

was no evidence before the board which would warrant a finding of such injury. The testimony of the medical expert, to which the board refers in its decision, goes no farther than an expression of opinion that the dislocation of the lens in the right eye was caused by the absence of some of the fibres which normally hold the lens in place and that "the absence of the fibres may be due to disease, toxic conditions in the mother, and it may be a transmitted characteristic from parents to child." The board was, therefore, in error in finding that the claimant is "an employee who has previously suffered a personal injury." Decisions in other jurisdictions, some of which are cited by the insurer, which have permitted congenital defects to be the basis for payments from a State fund similar to that provided for in § 65, arose under statutes different in language from § 37 and are, therefore, not in point.

It is contended by the insurer that the Treasurer of the Commonwealth was without authority to appeal from the decree of the Superior Court. The Attorney General was notified by the board to appear at the hearing before it and in its "Findings, Decision and Order" it states that it considered that the Attorney General represented the Treasurer of the Commonwealth as custodian of the special fund. See *Hurley's Case*, 302 Mass. 46. On the hearing before the Superior Court, the Attorney General filed an appearance for the Treasurer. In our opinion the Treasurer was a party to the proceedings. See *Commonwealth* v. *Hudson*, 315 Mass. 335, 338. He was the custodian of the special fund set up under the provisions of § 65 and it was his duty to make payments therefrom on the written order of the department for the purposes set forth in § 37. See *Attorney General* v. *Bureau of Old Age Assistance of Cambridge*, 324 Mass. 63. The correctness of the departmental order, being made under the provisions of the act, could be questioned by the one to whom it was directed under the procedure established by the act. It was the Treasurer's duty as a public official to make no payments unless warranted by law. He was a party in interest before the Superior Court

under § 11, as amended, and as a party aggrieved he could appeal to this court from an adverse decision. G. L., (Ter. Ed.) c. 214, § 19. See *Kline* v. *Shapley*, 232 Mass. 500, 502; *Monroe* v. *Cooper*, 235 Mass. 33, 34.

The decree is reversed and a decree is to be entered dismissing the claim.

*So ordered.*