AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *vs.*
COMMONWEALTH.

Suffolk. September 14, 1979. — December 26, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Workmen's Compensation Act*, Special fund, Reimbursement of insurer.
*Statute*, Retroactive statute.

A workmen's compensation insurer was entitled to reimbursement from
the Commonwealth's Second Injury Fund under G. L. c. 152, § 37, as
appearing in St. 1973, c. 855, § 2, for fifty per cent of the amount of
compensation paid to the injured employee after the first 104 weeks of
disability, notwithstanding the fact that the insurer's claim was based
only on injuries sustained by the employee prior to the effective date of
the 1973 amendment, which did not affect or increase the amount
payable to the employee [401-404]; the 1973 amendment was proce-
dural, and G. L. c. 152, § 2A, inserted by St. 1946, c. 386, § 3, ap-
plied to render its provisions retroactive [404-407].

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the Workmen's Compen-
sation Act.

The case was heard by *Coddaire,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Ronald C. Kidd* for the plaintiff.

*Richard E. Daly,* Special Assistant Attorney General, for
the Commonwealth.

ABRAMS, J.  The question presented is whether the plain-
tiff, American Mutual Liability Insurance Company
(American Mutual), the workmen's compensation insurer,
is entitled to reimbursement from the Commonwealth's Sec-
ond Injury Fund (G. L. c. 152, § 37,[1] as appearing in

---

[1] Section 37, as amended, reads in pertinent part:

"Whenever an employee who has a known physical impairment which
is due to any previous accident, disease or any congenital condition and is,

St. 1973, c. 855, § 2), where the insurer's claim is based on an injury which occurred prior to the effective date of the amendment. We hold that reimbursement is proper due to the operation of G. L. c. 152, § 2A.[2]

or is likely to be, a hindrance or obstacle to his employment, and who, in the course of and arising out of his employment, receives a personal injury for which compensation is required by this chapter and which results in disability that is substantially greater by reason of the combined effects of such impairment and subsequent personal injury than that disability which would have resulted from the subsequent personal injury alone, the insurer or self-insurer shall pay all compensation provided by this chapter. Such insurer or self-insurer shall, however, be reimbursed by the state treasurer from the fund created by section sixty-five in an amount not to exceed fifty per cent of all compensation subsequent to that paid for the first one hundred and four weeks of disability.

"If said subsequent injury is caused by the pre-existing impairment or if said subsequent personal injury of such an employee shall result in the death of the employee, and it shall be determined that the death would not have occurred except for such pre-existing physical impairment, the insurer or self-insurer shall pay all compensation provided by this chapter. Such insurer or self-insurer shall, however, be reimbursed by the state treasurer from the fund created by section sixty-five in an amount not to exceed fifty per cent of all compensation paid in excess of that paid for the first one hundred and four weeks.

"Personal knowledge upon the part of the employer as to the existence of such pre-existing physical impairment shall not be required for reimbursement as provided by this section; provided, however, that proof of the pre-existence of such impairment shall be directly established from medical records existing prior to the date of employment or retention in employment of such an employee, or from information established by the employer not later than thirty days subsequent to the date of employment from either a physical examination, employment application questionnaire or statement from the employee.

". . . .

"In the event that liability for any case arising under this section is redeemed by a lump sum payment as provided in section forty-eight, and if the attorney general has been given an opportunity to appear and be heard on behalf of the fund, and when the order of the division refers to the provisions of this section, reimbursement shall be made without the necessity of further approval of the lump sum by the state treasurer; but no reimbursement shall be made covering the first one hundred and four weekly payments, whether paid under an agreement, decision or lump sum settlement."

[2] Section 2A, inserted by St. 1946, c. 386, § 3, reads as follows:

"Every act, in amendment of this chapter, in effect on the effective date of this section or thereafter becoming effective which increases the

We briefly summarize the evidence presented to the Industrial Accident Board (board).[3]  Amos McLeod, the insured worker in this case, first injured his back in 1961 while working in Connecticut.  Between January, 1962, and April, 1963, McLeod underwent multiple operative procedures for two ruptured intervertebral discs, and ultimately underwent a spinal fusion in the lower back area.

McLeod was not able to return to work until 1968, when he was hired by Springfield Steel Erectors as a truck driver and equipment handler.  On April 20, 1972, he again injured his back when he slipped on a rock while lifting a heavy piece of equipment.  McLeod continued to work until May 5, 1972, but has not returned to work since that date.  On April 28, 1976, the board ordered the insurer to pay him total disability plus dependency benefits from May 5, 1972, to date and continuing.  The plaintiff has been paying the compensation as ordered.

When the payments made by the plaintiff exceeded 104 weeks[4] the plaintiff petitioned the board, under § 37, for reimbursement of fifty per cent of the compensation it had been ordered to pay.  In its decision of March 31, 1978, the board found that "the employee had a known physical impairment due to previous accidents which was likely to be and was a hindrance or obstacle to his employment and

---

amount or amounts of compensation payable to an injured employee or his dependents shall, for the purposes of this chapter, be deemed to be substantive in character and shall apply only to personal injuries occurring on and after the effective date of such act, unless otherwise expressly provided.  Every act, in amendment of this chapter, in effect on the effective date of this section or thereafter becoming effective which is not deemed to be substantive in character within the meaning of this section shall be deemed to be procedural or remedial only, in character, and shall have application to personal injuries irrespective of the date of their occurrence, unless otherwise expressly provided."

[3] The evidence before the board consisted of a statement of agreed facts and various medical records and reports submitted by agreement of the parties.

[4] The insurer claims that since both the 104th week of disability and the date of its petition for reimbursement occurred after the effective date of the statute, it is entitled to reimbursement even if St. 1973, c. 855, is prospective only.  We do not discuss this argument.

which resulted in a disability substantially greater by reason of the combined effects of such impairment and the subsequent injury in 1972."[5]  The board ruled that § 37 was applicable to the instant case because of the statute's procedural nature, and ordered the State Treasurer to reimburse American Mutual fifty per cent of the amount of compensation paid to McLeod after the first 104 weeks of disability.

Pursuant to G. L. c. 152, § 11, the Commonwealth timely filed an appeal in Superior Court and thereafter the insurer moved for entry of judgment. The court below reversed the board's order and dismissed the petition, holding that the board's factual findings were supported by sufficient evidence, but that the parties' rights were fixed at the time of the injury, April 20, 1972, prior to the effective date of the amendment to § 37.[6]  Citing *Price* v. *Railway Express Agency, Inc.*, 322 Mass. 476 (1948), the court ruled that the amendment was substantive and declined to give it retroactive effect.  American Mutual appealed from the judgment, and we granted American Mutual's application for direct appellate review.  We reverse.

The statutory provision for the Massachusetts Second Injury Fund is contained in G. L. c. 152, §§ 37 and 65.[7]  The

---

[5] The Commonwealth makes the argument that the insurer has the burden of proving that, at the time McLeod was hired, he must have demonstrated a pre-existing physical impairment which was actually a hindrance or an obstacle to his employment.  This contention is not supported by the language of the statute which provides only that the impairment is, *"or is likely to be"* a hindrance and further that "[p]ersonal knowledge upon the part of the employer as to the existence of such pre-existing physical impairment shall not be required for reimbursement as provided by this section; . . ." (emphasis added).

[6] The amending act, St. 1973, c. 855, § 2, was approved October 2, 1973.  Its effective date was on or about December 31, 1973.  See art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum I; G. L. c. 4, § 1.

[7] In pertinent part, § 65, as appearing in St. 1973, c. 855, § 5, reads:
"For every case of personal injury resulting in death covered by this chapter, the insurer or self-insurer shall pay into the state treasury five hundred dollars, such payment to be made in all cases regardless or [*sic*] whether the employee's dependents or personal representatives commence

purpose of the fund is "to encourage the employment of persons who have previously suffered certain defined personal injuries by relieving the employer or the insurer from the burden of paying the entire compensation for further disability of the employee due to the combined effect of his previous injury and one later received in the course of his employment."[8] *McLean's Case*, 326 Mass. 72, 74 (1950) (construing former version of § 37). See *Fallon's Case*, 322 Mass. 61, 62 (1947); 2 A. Larson, Workmen's Compensation § 59.32, at 10-294 (1976). As originally enacted, the Massachusetts Second Injury Fund provided relief in only a limited class of cases where the previous personal injury resulted in the actual or functional loss of hand, foot, or eye, and a subsequent injury of the same type resulted in further disability.[9] An insurer

---

action against a third party under section fifteen. For every case of personal injury resulting in death covered by this chapter when there are no dependents the insurer or self-insurer shall pay into the state treasury an additional five hundred dollars. Payments under this section shall constitute a special fund in the custody of the state treasurer, who shall make payments therefrom upon the written order of the division for the purposes set forth in section thirty-seven and thirty-seven A and for the purpose of paying the expense of printing the necessary records, papers and briefs in certain appeals to the supreme judicial court as provided in section eleven. Payments made under section thirty-seven A shall have priority over any other payments made under this section.

"As soon as practicable after June thirtieth of any year in which payments . . . made from the fund established by this section exceed deposits therein, the chairman of the industrial accident board shall assess upon and collect from each insurance carrier and each self-insurer a sum equal to that proportion of the excess of disbursements over receipts during such year which the total compensation payments of such carrier or self-insurer bore to the total compensation payments made by all carriers and self-insurers during such year."

[8] Sections 37 and 65 were first enacted as St. 1919, c. 272, §§ 1 and 2, to ameliorate the impact of *Branconnier's Case*, 223 Mass. 273 (1916), in which this court held that, where an employee with a previous physical injury becomes totally incapacitated by reason of a second injury, his employer at the latter time must pay the total compensation to which the worker is entitled. See Report of the Special Recess Committee on Workmen's Compensation, Feb. 1919, 1919 Senate Doc. No. 334.

[9] In an effort to make the fund more effective, § 46 of c. 152 was amended in 1927 to permit handicapped workers to waive compensation

was entitled to be reimbursed by the State Treasurer for fifty per cent of the amount of the compensation paid to such a person.[10]

This scheme remained virtually unchanged until 1973, though not for want of effort.[11] Statute 1973, c. 855, § 2, amended the Second Injury Fund by extending its coverage to all types of physical impairment. The purpose of the amendment was to encourage the hiring or retention of handicapped or previously injured employees.[12]

---

benefits for any injury caused or aggravated by a previous disability. St. 1927, c. 309, § 9. The theory was that the waiver provision would compensate for the reluctance of employers to hire or retain an employee whose physical condition created an extra insurance risk. See Report of the Special Commission Appointed to Investigate the Operation of the Workmen's Compensation Law, 1927 House Doc. No. 999. Statute 1973, c. 855, § 4, abolished this exception to the general rule that no employee can waive his compensation rights.

[10] Originally, the Commonwealth was directly liable to the employee for fifty per cent of the compensation due. The indirect reimbursement plan was introduced by St. 1950, c. 527.

[11] In 1962, the Report of the Special Commission Relative to the Problems of the Rehabilitation, Employment or Re-employment of Handicapped or Disabled Persons (1962 House Doc. No. 3420) recommended passage of House Doc. No. 3420, "An Act to facilitate the employment or re-employment of disabled workers by expanding the functions of the second injury fund," stating that "passage of this legislation would encourage employers more readily to employ handicapped persons for the reason that the effect of a second industrial accident would not be fully chargeable upon the employer hiring a handicapped person, but would be chargeable after 52 weeks upon the Second Injury Fund." Report, Transmittal Letter. The bill was rejected. Almost every year thereafter similar legislation was introduced, none of which achieved passage until 1973. See, e.g., 1972 Sen. Doc. No. 1274; 1971 House Doc. No. 6192; 1970 Sen. Doc. No. 1371; 1969 House Doc. No. 5596; 1968 House Doc. No. 629; 1967 House Doc. No. 796; 1966 House Doc. No. 2479; 1964 House Doc. No. 1956; and finally, 1963 House Doc. No. 1242. We take judicial notice of legislative history. See *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 122 (1973). See generally L. Locke, Workmen's Compensation § 309 (1968 & Supp. 1977); L. Locke, Years of Change: Recent Developments in Massachusetts Workmen's Compensation Law, 60 Mass. L.Q. 55, 64 (1975).

[12] We note that the 1973 amendment also changed the amount of reimbursement from fifty per cent to "an amount not to exceed 50%." One commentator has suggested that the use of this language "requir[es] the board to determine the degree to which the pre-existing impairment has

The Commonwealth's basic position is that the amendment to § 37 creates new substantive rights, and, as such, it is limited to prospective operation only in accordance with the traditional rules of statutory construction. See, e.g., *City Council of Waltham* v. *Vinciullo,* 364 Mass. 624, 626 (1974); *Yates* v. *General Motors Acceptance Corp.,* 356 Mass. 529, 531 (1969); *Hanscom* v. *Malden & Melrose Gas Light Co.,* 220 Mass. 1, 3 (1914). It is clear that § 37 would be substantive in nature and therefore prospective only if G. L. c. 152, § 2A, were not applicable.

General Laws c. 152, § 2A, provides, however, a special rule to determine the scope of amendments to the Workmen's Compensation Act, thereby replacing the application of the general rule. Section 2A provides, in essence, that any amendment which increases the amount of compensation paid to an employee, or his dependents, shall be deemed substantive and shall apply only to injuries occurring on and after the date of that act and that all other amendments "unless otherwise expressly provided" shall be deemed procedural and shall apply retroactively. Based on this section, the insurance company argues that since the amendment in this case does not affect or increase the amount payable to Amos McLeod, the claim is not substantive and is, therefore, retroactive under the provisions of § 2A. We agree.

In contending that G. L. c. 152, § 2A, is not applicable, the Commonwealth relies on *Price* v. *Railway Express Agency, Inc.,* 322 Mass. 476 (1948). In *Price,* the plaintiff made a claim against his employer under a section not in effect at the time of the employee's injury. The pertinent section brought the defendant employer within the scope of the Workmen's Compensation Act, when prior to its enactment, and at the time of the injury, the employer was not within the scope of the act. The plaintiff employee argued that since the claim did not involve an increase in the

---

contributed to the disability or death, so that it may order reimbursement in a proportionate amount, not to exceed fifty percent." Locke, *supra,* § 309, n.83.6 (2) (Supp. 1977). We are not here confronted with any issue as to the meaning of this language.

amount of compensation paid (but rather a new claim not previously existing), that, under § 2A, the section would be procedural and therefore should be retroactive. We denied relief because retroactive application of § 2A would have resulted in an increase in the compensation burden of the *employer*. Such a result was found to be contrary to the legislative purpose behind § 2A, which "limits the award to one who had a compensable claim to the amount fixed at the time of his injury" and which "prohibits the imposition of an additional burden . . . [i.e., an] increase in compensation." *Id.* at 484.

Cases applying § 2A after *Price* have applied amendments to G. L. c. 152 retroactively unless the amendment increased the amount of compensation to be paid to a worker. See, e.g., *Steuterman's Case*, 323 Mass. 454, 457 (1948); *Beausoleil's Case*, 321 Mass. 344, 346-347 (1947) (increases in compensation due worker prospective only). Cf. *Riordan's Case*, 362 Mass. 882 (1962); *Khachadoorian's Case*, 329 Mass. 625, 629 (1953); *Goddu's Case*, 323 Mass. 397, 399-400 (1948) (matters of proof retroactive). Contrast *Murphy's Case*, 352 Mass. 233, 234-235 (1967) (increase in rate of interest applied to pending case).

On the record before us, retroactive application of § 37, as amended, will lead neither to an increase in any existing compensation obligation, nor to the creation of new employee claims for compensation. The Commonwealth concedes that § 37 "does not specifically increase the amount payable to an injured employee. . . ." Rather, it provides for reimbursement to those insurers and self-insurers who are under a continuing obligation to pay compensation for second injuries which occurred prior to the effective date of the act. The record does not bear out the Commonwealth's claim that rights other than those belonging to the Commonwealth will be impaired. "[W]here a State enacts retroactive legislation impairing its own rights, it cannot be heard to complain. . . ." *Greenaway's Case*, 319 Mass. 121, 123 (1946). The Legislature clearly has the authority to place additional burdens on the Second Injury Fund if it

wishes to do so. *Leveille's Case,* 353 Mass. 667, 670 (1968). Cf. *Greenaway's Case, supra.*

The Commonwealth also argues that if the purpose of the act is to encourage the employment or re-employment of handicapped workers, then retroactive application of the act could not affect the hiring of anyone in the past. Even if this were clearly so,[13] it is for the Legislature to determine what means would best effectuate its purpose. If the Legislature wanted to limit the operation of the amended § 37 to cases arising after its effective date, it could have done so specifically. "[W]e assume, as we must, that the Legislature was aware of the existing statutes [i.e., G. L. c. 152, § 2A] in enacting [c. 855]." *Hadley* v. *Amherst,* 372 Mass. 46, 51 (1977). *Devney's Case,* 223 Mass. 270, 271 (1916).

Next, the Commonwealth suggests that the provision in § 37 allowing the Attorney General to appear and be heard on behalf of the Second Injury Fund at lump sum settlement proceedings would be rendered meaningless if the statute is applied retroactively. That provision is inapplicable to the instant case where the insurer is under a continuing obligation to the employee.[14] The statutory language relied on by the Commonwealth permits reimbursement to the insurer after 104 weeks "if the attorney general has been given an opportunity to appear and be heard on behalf of the fund, and when the order of the division refers to the provisions of this section, reimbursement shall be made without the necessity of further approval of the lump sum by the state treasurer." G. L. c. 152, § 37. Thus, if the Attorney Gen-

---

[13] In the third paragraph of § 37, the Legislature speaks of "date of employment or *retention* in employment" (emphasis added), which in our view, indicates that the act applies to employees who were injured before as well as after the act went into effect. Cf. *C & P Tel. Co.* v. *Director, Office of Workers' Compensation Programs,* 564 F.2d 503, 512 n.8 (D.C. Cir. 1977).

[14] There is no issue before us as to a case settled by lump sum payment. See generally *City Council of Waltham* v. *Vinciullo,* 364 Mass. 624, 627 (1974); *School Comm. of Springfield* v. *Board of Educ.,* 366 Mass. 315, 337 (Quirico, J., concurring), cert. denied, 421 U.S. 947 (1975). See also *Porter* v. *Clerk of the Superior Court,* 368 Mass. 116, 118 (1975); *Wolfe* v. *Mass. Port Auth.,* 366 Mass. 417, 421 n.3 (1974).

eral and the division approve a lump sum settlement, the statute provides that no further action by the State Treasurer is necessary. We do not think that this statutory language bears on whether the statute is to operate prospectively or retroactively. In any event, this language has no application to the insurer in McLeod's case.

Finally, the Commonwealth contends that the Second Injury Fund is inadequately funded if the amendment to § 37 is retroactive. This contention is neither supported by the record nor persuasive, since the Legislature specifically provided for that eventuality by empowering the chairman of the Industrial Accident Board to levy additional assessments upon insurers and self-insurers in the event payments from the fund exceed deposits in any given year. G. L. c. 152, § 65, third par. Moreover, "[t]he arguments as to hardship . . . [are] appropriate respecting the enactment of legislation. They are not controlling in the interpretation of existing statutes." *Eastern Mass. St. Ry.* v. *Trustees E. Mass. St. Ry.*, 254 Mass. 28, 33 (1925). The judgment of the Superior Court is reversed and a new judgment should be entered in accordance with the decision of the board.

*So ordered.*