RICHARD E. DALY *vs.* COMMONWEALTH & others.[1]

No. 89-P-405.

Essex. April 10, 1990. - July 31, 1990.

Present: BROWN, KASS, & JACOBS, JJ.

*Workers' Compensation Act*, Special fund. *Statute*, Repeal, Construction.

Discussion of the legislative history of the Workers' Compensation Second Injury Fund. [101-103]

The Legislature's revision of G. L. c. 152, § 65, by the enactment of St. 1985, c. 572, did not repeal, by implication, the operation of the Workers' Compensation Second Injury Fund established by St. 1973, c. 855, and the fund's obligations were not thereby extinguished. [103-104] BROWN, J., concurring.

Obligations of the Commonwealth to pay certain legal fees incurred in the administration of the Workers' Compensation Second Injury Fund, remaining unpaid due to the insolvency of that fund, were to be met from the Workers' Compensation Special Fund created by St. 1985, c. 572, § 55, which in part superseded the Second Injury Fund. [104-105] BROWN, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on April 13, 1988.

The case was heard by *Peter F. Brady*, J.

*Steven H. Wright*, Assistant Attorney General, for the Commonwealth.

*Kevin T. Daly* for the plaintiff.

*Richard E. Mastrangelo & Paul F. Meagher*, for Associated Industries of Massachusetts, amicus curiae, submitted a brief.

---

[1]The complaint, which is for a declaratory judgment, was lodged against the Department of Industrial Accidents, Joel Pressman, as he is the Commissioner of Industrial Accidents, and Robert Q. Crane, as he is Treasurer of the Commonwealth. All are complained against as agents of the Commonwealth. An amicus curiae brief was filed in support of the Commonwealth's position by the Associated Industries of Massachusetts.

KASS, J. Concerning the underlying obligation to the plaintiff, Richard E. Daly, there is neither mystery nor dispute. The Commonwealth in its brief concedes that at all times material the plaintiff held an appointment as a special assistant attorney general to defend claims against, or prosecute claims on behalf of, the Workers' Compensation Second Injury Fund ("Second Injury Fund").[2] For his services in that capacity, the plaintiff billed $72,403.87, which the Commonwealth agrees is a fair charge for services competently performed.[3] What the Commonwealth says in defense of its failure to pay the plaintiff is that the Second Injury Fund is insolvent — down to its last $12,529.45 against debts in excess of $2,500,000. The question is whether the plaintiff's claim may be collected against the successor funds established by St. 1985, c. 572, § 55. We think that they may.

We sketch some relevant litigation and legislative history.

The case was decided below in favor of the plaintiff on the Commonwealth's motion for summary judgment. In the final judgment entered, the Superior Court judge ordered $72,403.87 to be paid, together with $16,119.26 on account of interest. Of the total, $12,529.45 was to be from what was left in the Second Injury Fund. The balance was to be assessed to insurers and self-insurers under the workers' compensation system. From that judgment the Commonwealth has appealed.

Although it begins in 1919, we may pick up the history of the Second Injury Fund with the enactment of St. 1973, c. 855, § 5, which gave the operation of the fund substantially the form it had until the passage of St. 1985, c. 572, § 55. The purpose of the Second Injury Fund was to encourage the employment of previously injured persons by

---

[2]See St. 1973, c. 855, §§ 2 and 5.

[3]We were saddened to observe that at an earlier stage of the litigation, responses to notices to admit facts on behalf of officers of the Commonwealth were evasive about the most elementary facts (e.g., whether the plaintiff had been appointed a special assistant attorney general). The courts are entitled to expect a higher level of industry and candor in responses to discovery from any member of the bar and surely from attorney for the government.

providing a fund which would pay a portion of the compensation burden that would result should the employee suffer a further injury. It might be anticipated that the subsequent injury, compounded with the previous one, would often lead to more serious disability. See *McLean's Case*, 326 Mass. 72, 74 (1950); *American Mut. Liability Ins. Co.* v. *Commonwealth*, 379 Mass. 398, 402-403 (1979); Locke, Massachusetts Workers' Compensation Reform Act § 9.7 (1987, supplementing Locke, Workmen's Compensation, 2d ed. 1981). Within the framework of the workers' compensation statute, G. L. c. 152, the insurer's right to reimbursement from the Second Injury Fund appeared in § 37 and the machinery for payment into the fund appeared in § 65.

In 1985, culminating a long effort, the Legislature enacted a comprehensive reform of the workers' compensation system. See generally, Locke, *supra*, §§ 1.1 — 1.6. Both § 37 and § 65 were amended. The amendment of § 37 increased to 75% the amount which an insurer could recoup on account of second injury compensation after 104 weeks, St. 1985, c. 572, § 48, and assigned to the Attorney General a larger role in defending the fund from which those payments were to be made, St. 1985, c. 572, § 49.

Amendments to § 65 were extensive. In its pre-1985 form the Second Injury Fund drew its resources from insurers and self-insurers in the workers' compensation system. The final paragraph of old § 65 provided that the expense of the Attorney General's representation of the fund (e.g., in the pursuit of deposits and the defense of claims) was to be paid out of the fund.[4] The 1985 act amended § 65 so that there are two special funds: the first is designated the Workers' Compensation Special Fund (the "special fund"), and its function is to pay the operating expenses of the Department of Industrial Accidents; the second is the Workers' Compensation Trust Fund (the "trust fund"). The latter fund is responsible

---

[4]It is likely that this provision for allocation to the Second Injury Fund and payment from it of the Attorney General's services made it expedient to appoint a special assistant attorney general who would not be on the Attorney General's payroll.

for seven categories of compensation, including the two for which the old Second Injury Fund made payments.[5] Money required by the special fund and the trust fund is raised by assessment of employers. Insurers and self-insurers met the needs of the old Second Injury Fund.

At the core of the Commonwealth's position is the idea that the 1985 act repealed old § 65; i.e., the Second Injury Fund was obliterated and its obligations died with it. Claims against the Second Injury Fund are to be regrettable casualties of high State purpose. We do not ascribe so cynical a purpose to the Legislature nor do the history and language of the 1985 statutory revisions require it.

Seldom do courts determine that legislation has been repealed by implication. *Haffner* v. *Director of Pub. Safety*, 329 Mass. 709, 713-714 (1953). *Dudley* v. *Cambridge*, 347 Mass. 543, 545 (1964). As we have noted, St. 1985, c. 572, effected a comprehensive revision of the workers' compensation law. The amending act adhered to the structure and section numbers of G. L. c. 152 as it existed and made both minor and major revisions of the old text. When the Legislature desired to repeal an existing provision of the workers' compensation statutes, it knew how to do so and said expressly that a particular section of prior law was repealed. Thus, §§ 3, 6, 15, 20, 22, 23, and 51 of St. 1985, c. 572, are express repeal provisions. (Two of the seven repealers pertained to statutes outside of c. 152, but connected with the workers' compensation system.)

The revision of G. L. c. 152, § 65, by contrast, began with the words: "Said chapter 152 is hereby further amended by striking out section 65, as appearing in the 1984 Official Edition, and inserting in place thereof the following section:- "The Commonwealth urges application of a guide to construction of statutes which says that when a statutory provision is entirely rewritten, it should be read as having repealed the statute it supersedes. See Sands, Sutherland Statutory

---

[5]In addition to second injury claims under § 37, the Second Injury Fund also paid, pursuant to § 37A, for aggravated disability resulting from industrial injury on top of disability suffered in the armed services.

Construction § 23.12 (4th ed. 1985). Whatever the validity of that canon of interpretation in certain limited circumstances (e.g., if second injury compensation had been eliminated from the statutory scheme altogether), it has no application to the 1985 revision of § 65, which painstakingly preserved the fundamentals of the system of benefits and reimbursement, albeit making changes in the manner and means by which that system was to be paid for and administered. Particularly in the case of the sort of comprehensive amendment and reorganization which St. 1985, c. 572, represents, one may anticipate gaps in the continuity of the old and new statutory schemes.[6] If courts are called upon to fill those gaps, they should give effect to the apparent legislative purpose of continuity.

Expression of that purpose of continuity appears in St. 1985, c. 572, § 61, which prescribes continuity between the old Division of Industrial Accidents and the new Department of Industrial Accidents. The fourth paragraph of that section provides that, "All duly existing contracts, leases and obligations of the division of industrial accidents which are in force immediately prior to the effective date of this section, shall be performed by the department of industrial accidents." One could cavil that there is a distinction between obligations of the old division and those of the Second Injury Fund, but that is to overlook the connection, i.e., that the Second Injury Fund existed to support functions of the division. That connection is stronger under the 1985 revisions. We view the special funds established under the 1985 statute as successors to the old Second Injury Fund. Under the new scheme, it will be recalled, administrative costs of the department are paid out of the special fund and contributions to compensation are paid out of the trust fund. The obligations

---

[6]Indeed, in 1986 the Legislature found it necessary to pass a corrective act which made fifty-four technical amendments to the 1985 reform act ranging from the repair of typographical mistakes to more significant errors or omissions. See St. 1986, c. 662. See also Locke, *supra,* preface to 1987 edition.

to the plaintiff Daly, therefore, should be paid out of the special fund.

The debt due the plaintiff involves no new compensation benefits and the provisions of G. L. c. 152, § 2A, which make such benefits prospective, do not govern the question before us. See *American Mut. Liability Ins. Co.* v. *Commonwealth*, 379 Mass. at 401-407. As previously noted, the sources for a major portion of the resources of the old Second Injury Fund were insurers and self-insurers, whereas the substantial burden for funding the new special fund and trust fund falls on employers. This involves most employers directly whereas before they were involved indirectly through the payment of insurance premiums. In view of our conclusion that the new special fund and trust fund are in a line of succession from the old Second Injury Fund, there is no merit to the Commonwealth's argument that the 1985 statute, as we construe it, unlawfully imposes liability where there was no liability before.

In his judgment, the Superior Court judge required that the amount due the plaintiff be assessed to workers' compensation insurers and self-insurers. The judge obviously had in mind the source of funds for the old Second Injury Fund. We think that aspect of the judgment failed to take into account that the successor mechanism of the special fund was in place and that it now is the source of funds from which operating expenses of the department are paid. Legal fees are such an expense. The judgment shall be modified to declare that the Commonwealth is obliged to pay plaintiff $72,403.87, plus statutory interest and costs, the funds therefor to be drawn from the special fund established under St. 1985, c. 572, § 55, and by application of such funds, if any, as remain in the account of the Second Injury Fund. As so modified, the judgment is affirmed.

*So ordered.*

BROWN, J. (concurring). I am in full agreement with the majority opinion. But once again I am compelled to comment on the conduct of a member of the bar.

When it came to its motion for summary judgment, the Commonwealth was prepared to admit that the plaintiff would be entitled to payment for services rendered — if the special fund contained enough money to pay him. A mere six months earlier, however, in responses to the plaintiff's requests for admissions, there was a seeming reluctance to admit anything. As one example, consider the response to a request for an admission that "The Plaintiff was responsible, at all times relevant to this action, for defending the Special Fund . . .":

> "Defendant is without knowledge sufficient to admit or deny this request. Defendant has made a reasonable inquiry and the information known or readily obtainable by it is insufficient to enable it to admit or deny this request.
>
> "Defendant states further, it is aware that Plaintiff had an arrangement with the Department of the Attorney General concerning Plaintiff's representation of the Second Injury Fund. However, Defendant cannot admit or deny the specific terms of the arrangement as Defendant was not in privity of contract with the Plaintiff and the Department of the Attorney General."

This from a document prepared by an assistant attorney general. I hasten to add that the office of the Attorney General has had its knuckles rapped before. See *Lovell* v. *Superintendent, N. Cent. Correctional Inst.*, 26 Mass. App. Ct. 35, 41 (1988) (Brown, J., concurring). I reiterate here that, of all members of the bar, it is *imperative* that attorneys for the Commonwealth not only take care to behave themselves but that they set the standard by their exemplary conduct. Cf. *Commonwealth* v. *Tirrell*, 382 Mass. 502, 513 (1981) (Kaplan, J. dissenting); *Commonwealth* v. *Felton*, 16 Mass. App. Ct. 63, 66 (1983).