SHELBY MUTUAL INSURANCE COMPANY *vs.*
COMMONWEALTH (and a companion case[1]).

Nos. 92-P-1407 & 93-P-1626.

Plymouth. Suffolk. January 28, 1994. - April 7, 1994.

Present: ARMSTRONG, FINE, & GILLERMAN, JJ.

Further appellate review granted, 418 Mass. 1102 (1994).

*Workers' Compensation Act*, Special fund, Reimbursement of insurer. *Statute*, Retroactive statute. *Constitutional Law*, Obligation of contracts, Taking of property, Police power.

Discussion of the history of statutory mechanisms under G. L. c. 152, § 65, as amended by St. 1985, c. 572, § 55, and St. 1989, c. 565, for partial reimbursement to workers' compensation insurers for compensation paid pursuant to G. L. c. 152, §§ 37 and 37A, on account of further work-related injuries suffered by employees who had been previously injured. [319-321]

The amendment to G. L. c. 152, § 65, effected by St. 1989, c. 565, extinguished the rights of insurers to claim partial reimbursement for benefits paid pursuant to G. L. c. 152, §§ 37 and 37A, on account of previously injured employees' claims for further work-related injuries occurring before December 10, 1985 [321-322]; and that amendment was not repealed implicitly or explicitly by the 1991 amendments to the Workers' Compensation Act [322-323].

The amendment to the Workers' Compensation Act, G. L. c. 152, § 65, effected by St. 1989, c. 565, which retroactively extinguished valid contracts and claims for reimbursement of certain workers' compensation insurers with respect to certain work-related reinjuries occurring before December 10, 1985, was reasonable and thus not unconstitutional, where the purpose of the amendment was to protect the public interest in the integrity of the workers' compensation scheme; where there was no showing that the insurers were injured by the extinguishment of their rights; and where the impact of the amendment was not shown to have been large or disproportionate. [323-326]

Insurers seeking reimbursement for workers' compensation benefits paid pursuant to G. L. c. 152, § 37, on account of claims made by previously injured employees for subsequent work-related injuries occurring before December 10, 1985, were not entitled to such reimbursement from the Commonwealth's general fund; however, a claim for reimbursement for such an injury, paid pursuant to G. L. c. 152, § 37A,

---

[1]Merchants' Insurance Company & others *vs.* Commonwealth.

was, under the provisions of the Workers' Compensation Act, compensable out of the general fund. [326-327]

CIVIL ACTION commenced in the Superior Court Department on August 17, 1990.

The case was heard by *John A. Tierney*, J.

APPEALS from decisions of the Industrial Accident Reviewing Board.

The cases were consolidated by *Perretta*, J., and were reported by her.

*Donald H. Jackson, Jr.*, for Shelby Mutual Insurance Company.

*W. Frederick Uehlein* (*Leonard Y. Nason* with him) for Merchants' Insurance Company & others.

*James A. Sweeney*, Assistant Attorney General, for the Commonwealth.

FINE, J. These two appeals involve so-called "second injury claims" by four workers' compensation insurance companies. Each of the insurers, as required by law, paid the entire compensation claim for an employee's disability which was caused by a compensable injury in combination with a previous injury. The insurers claim the right to reimbursement of a portion of their payments from the Workers' Compensation Trust Fund (Trust Fund) or from the Commonwealth's general fund. Shelby Mutual Insurance Co. (Shelby) filed a breach of contract claim against the Commonwealth in the Superior Court, and summary judgment was ordered in Shelby's favor for $12,270.65, to be paid from the Commonwealth's general fund. Merchants' Insurance Company (Merchants), Central Mutual Insurance Company (Central), and Nationwide Insurance Company (Nationwide) brought their claims for payment from the Trust Fund before the Department of Industrial Accidents (Department). The Department's reviewing board, on appeal from the decision of an administrative judge, determined that the insurers were not entitled to payment from the Trust Fund. We consolidated the Commonwealth's appeal from the Superior Court judgment and the three insurers' appeals from the reviewing

board's decision because they involve the same issues of law. Relying on a 1989 statute (St. 1989, c. 565), which we determine to be a valid measure that remains in effect, we affirm the decision of the reviewing board of the Department of Industrial Accidents and reverse the Superior Court judgment.

1. *The insurers' claims and the statutory background.* To encourage the employment of previously injured persons, legislation has provided, since 1919, for a fund to pay insurers a portion of their compensation burden when a previously injured employee suffers a further work-related injury. The right to reimbursement appears in G. L. c. 152, §§ 37[2] and 37A,[3] and the machinery for creating and operating the fund appears in G. L. c. 152, § 65.[4] These provisions have undergone substantial changes over the years. The history is outlined in *American Mut. Liab. Ins. Co.* v. *Commonwealth*, 379 Mass. 398, 401-403 (1979), and *Daly* v. *Commonwealth*, 29 Mass. App. Ct. 100, 101-103 (1990). See also Nason & Wall, Massachusetts Workers' Compensation Reform Act §§ 1.1-1.6, § 9.7 (1990, supplementing Locke, Workmen's Compensation, 2d ed. 1981).

Each of the insurers is seeking reimbursement for claims paid as a result of injuries that occurred before December 10, 1985. The facts underlying the four claims are as follows:

a. Shelby paid compensation to Richard Manning for a second injury he sustained on November 25, 1975. Shelby sought reimbursement from the Second Injury Fund, predecessor to the Trust Fund, in 1982. On May 18, 1982, Shelby and a special assistant attorney general representing the fund executed a memorandum of agreement for payment in the amount of $12,270.65. The Commonwealth also agreed that reimbursement would continue at the rate of forty-five percent of future payments to Manning. In 1984, counsel for the Industrial Accident Board issued a letter stating that the "State Treasurer is ordered" to pay the stated amount to

---

[2]See Appendix (1) to this opinion.
[3]See Appendix (2) to this opinion.
[4]See Appendix (3) to this opinion.

Shelby from the Second Injury Fund. Payment has not been made.

b. Central paid compensation to William F. Lanoue for a second injury he suffered on June 14, 1978. Central filed a petition for reimbursement under § 37 on August 9, 1983. In three memoranda of agreement, two on November 14, 1985, and the other undated, a special assistant attorney general representing the Trust Fund agreed to reimburse Central for sixty-five percent of its payments to Lanoue and requested an order of payment on the Treasurer of the Commonwealth. The third memorandum, a final agreement for reimbursement of $42,343.77, was signed by an assistant attorney general and by an administrative law judge. Payment has not been made.

c. Nationwide paid compensation to Carl Vivace for a second injury he suffered on September 17, 1974, and filed a § 37 petition on May 19, 1980, for reimbursement from the Second Injury Fund, in the amount of $22,755. No agreement for reimbursement was reached.

d. Merchants paid compensation to Mark Sutcliffe, a disabled veteran, for a second injury he sustained on March 6, 1981. In April of 1988, Merchants filed a request for § 37A benefits. Agreement was reached with a special assistant attorney general representing the Trust Fund on June 8, 1990, for payment to Merchants in the amount of $175,000. The Commissioner of the Department refused to approve the agreement.

There is no dispute that each of the insurers has a claim that has at all relevant times fallen within § 37 or § 37A, and that each insurer would have had the right to reimbursement out of the Second Injury Fund which existed before the Workers' Compensation Act was substantially amended by St. 1985, c. 572, § 55. Before that amendment, § 65 provided for a Second Injury Fund which drew its resources from insurers and self-insurers in the workers' compensation system. The financing mechanism was significantly altered by the 1985 amendment. After that amendment, § 65 provided for two funds to be financed by assessments on employ-

ers: one fund to pay operating expenses of the Department; the other, the Trust Fund, to pay, among other things, second injury claims under §§ 37 and 37A. At no time did the Commonwealth contribute directly to the fund.

In *Daly* v. *Commonwealth,* 29 Mass. App. Ct. 100 (1990), this court determined, in connection with a claim for unpaid legal fees incurred in the administration of the Second Injury Fund, that the two funds established as a result of the 1985 amendment were successors to the old Second Injury Fund and that the legal fees should be paid out of one of those new funds. Although the claim in the *Daly* case involved an administrative expense and was, therefore, significantly different from the claims in this case, the decision strongly suggests that all claims which could have been brought against the old Second Injury Fund could, after the effective date of the 1985 amendments, be brought against the new Trust Fund.

The situation changed with respect to the instant claims with the Legislature's enactment of St. 1989, c. 565. That statute provides:

> Notwithstanding the provisions of section two A of chapter one hundred and fifty-two of the General Laws, section sixty-five of said chapter one hundred and fifty-two shall apply to an injury occurring on or after December tenth, nineteen hundred and eighty-five, except said section sixty-five shall apply to an injury for which compensation is payable under section thirty-four B and thirty-five C of said chapter one hundred and fifty-two, regardless of the date of such injury.

As neither § 37 nor § 37A is listed among the exceptions, the statute, on its face, makes the Trust Fund available only for claims related to injuries occurring after December 10, 1985.

Apparently, in enacting the 1989 amendment, the Legislature was responding to the chaotic situation then existing with regard to old second injury claims: assessments on insurers were inadequate and, as a result, the Second Injury

Fund was insolvent; a large number of claims (perhaps as many as 1,500) were pending in an undetermined amount, estimated to be in the millions; many insurers with valid claims were not filing them; there was uncertainty as to whether the Trust Fund was responsible for payment of second injury claims that related to injuries predating the 1985 amendment; and the employer community lacked the desire to pay claims that preexisted their direct involvement in the system. See *Daly* v. *Commonwealth*, 29 Mass. App. Ct. at 101; Nason & Wall, *supra*, § 9.7. See also the opinion of the dissenting member of the reviewing board in this case. Given this background and the language of the statute, we think the plain intent of the Legislature[5] was to extinguish second injury reimbursement claims based upon injuries occurring before December 10, 1985.[6] Thus, if the 1989 statute remains in effect and was a constitutionally valid measure, the insurers may not recover against the Trust Fund.

2. *The 1989 statute has not been repealed.* Contrary to the insurers' contention, the 1989 amendment was not repealed by amendments to the Workers' Compensation Act adopted in 1991. There is no reference in the 1991 amendments to the 1989 statute or its subject matter. The only procedural changes that would have any effect on earlier legislation limited payments from the Trust Fund for employees injured while working for uninsured employers. There is no inconsis-

---

[5]What legislative history concerning the 1989 amendment has been brought to our attention confirms our interpretation of probable legislative intent. Testimony of Paul J. Eustace, Secretary of Labor, presented April 3, 1989, to the Joint Committee on Commerce and Labor points to the need to clarify the Trust Fund's obligations with regard to old claims. A statement of Associated Industries of Massachusetts in Support of S. 135 and H. 3147 to the Joint Committee on Commerce and Labor on April 3, 1989, points out that the Second Injury Fund never had sufficient revenues to satisfy its obligations, that, at the time, the Second Injury Fund owed approximately $3,000,000 to insurers in approved claims and an estimated $20,000,000 to $30,000,000 in claims that had not been filed, and that clarification of the Trust Fund's obligations with respect to those claims was needed.

[6]The court did not have to consider the effect of the 1989 statute in *Daly* because the statute refers only to claims for injuries and has no application to a claim for legal fees.

tency between that provision and the 1989 statute. There was, therefore, no explicit or implicit repeal of the 1989 statute. See *Boston Hous. Authy.* v. *Labor Relations Commn.*, 398 Mass. 715, 718 (1986).

3. *The 1989 statute is not unconstitutional.* The insurers claim that the 1989 amendment, if interpreted to extinguish their contracts, is in violation of Art. 1, § 10, cl. 1, of the United States Constitution, which commands that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ." The insurers claim, further, that the extinguishment of their valid claims, even those which had not ripened into formal contracts, constitutes a taking of their property without just compensation and a deprivation of their property without due process of law. There is no need for separate analysis of the insurers' various constitutional theories as, in the context of this case, they "amount[ ] to much the same thing." *Opinion of the Justices*, 364 Mass. 847, 863 (1973). See *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 190 (1978); *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.*, 397 Mass. 416, 422 n. 7 (1986). The issue is the validity of legislation that, applied retroactively, adversely affects reimbursement rights of the insurers. There is a presumption in favor of the validity of statutes, and the insurers, therefore, carry a heavy burden in attempting to show that the statute is unconstitutional. See *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. at 190; *St. Germaine* v. *Pendergast*, 416 Mass. 698, 703 (1993).

The applicable principles are set forth in *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.*, 397 Mass. at 423.

> "A statute is not per se unconstitutional merely because it has the effect of restricting, or barring altogether, the performance of contracts entered into prior to its amendment. *Exxon Corp.* v. *Eagerton*, 462 U.S. 176, 190 (1983). *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 555 (1985). The Legislature may act pursuant to a valid exercise of its police power for the general good of the

public, even though contracts previously entered into may be affected. *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, 459 U.S. 400, 411-412 (1983). *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.*, 395 Mass. 836, 854 (1985). An impairment will be upheld if it is reasonable and necessary to serve an important public purpose. *United States Trust Co.* v. *New Jersey*, 431 U.S. 1, 25 (1977). Only those statutes which, on a balancing of opposing considerations, are deemed to be unreasonable will be held unconstitutional. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 190 (1978). We examine the reasonableness of a retroactive statute from three principal viewpoints: the nature of the public interest which motivated the Legislature to enact the statute; the nature of the rights affected retroactively; and the extent or scope of the statutory impact. *Id.* at 191."

There is no question that the effect of the 1989 amendment is to extinguish valid contracts and claims. We must, therefore, undertake an analysis of its reasonableness.

We first consider the nature of the public interest that motivated the Legislature to enact the retroactive statute. The Legislature's apparent intent was to protect employers in the Commonwealth who, starting in 1985, were responsible for funding the Trust Fund, from having to pay the large number of old second injury claims. Compare *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. at 192. Employers constituted a major segment of the public. The insolvency of the Second Injury Fund, the large number of old claims, the uncertainty at the time of enactment about the Trust Fund's responsibility for paying the claims, and objections to such payments by the employer community, called for some legislative remedy to assure orderly processing of claims and the integrity of the Trust Fund. We do not view the legislation as an effort on the part of the Commonwealth to avoid its own contractual obligations and as one, therefore, requiring strict scrutiny. See *United States Trust Co.* v. *New Jersey*, 431 U.S. at 25-26. The obligations extinguished were

those of the Trust Fund which, although managed by the Commonwealth, was financed entirely by private employers in the State. The legislative remedy adopted, extinguishment of claims and contracts relating to injuries occurring prior to December 10, 1985, is certainly a solution to the problem. Nevertheless, apart from other considerations, we might have viewed that remedy as unreasonable and therefore, unconstitutional, because it disrupted settled expectations and advanced only a limited public interest.

We proceed to consider the particular nature of the insurers' rights affected retroactively. In light of the complex statutory framework, and on the present record, we are not convinced that the insurers' rights were affected unreasonably. The statutory scheme was designed to spread the risk of second injury claims over the entire community of workers' compensation insurers. Insurers paid assessments to the Second Injury Fund and made claims against that fund. The total payments from insurers were to equal the sum of the claims. Assessments to replenish the old Second Injury Fund, however, were not made as required to meet the need. As to any of the four insurers in this case, or as to any of the other insurers with second injury claims, there has been no showing that the amount that would have been due from the Second Injury Fund exceeded the amount the insurer would have been assessed had assessments been made as contemplated. In addition, the insurers would have received increased premiums from their customers based upon their losses resulting from second injury claims. See G. L. c. 152, § 53A, before amendment of § 53A (2) by St. 1991, c. 398, § 81. In this situation, insurers could not reasonably have counted on payment in full of their old second injury claims.

It is a relevant consideration for these purposes that the workers' compensation insurance industry is an intensely regulated one. Companies engaged in such an industry are on notice that future legislation may affect their rights. See *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. at 193; *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.*, 397 Mass. at 424 & n.8. Indeed, language in G. L. c.

152, § 37A, dealing with disabled veterans who sustain second injuries, contemplates that the fund might become exhausted. In such a situation, § 37A, but not § 37, provides that the State Treasurer shall make the required payments from the general fund. It is true that responsibility for making assessments to replenish the old Second Injury Fund rested with the Commissioner of Insurance, and some fault lies, therefore, with the Commonwealth. The insurers could have brought an action in the nature of mandamus, however, to enforce their right to have the Commissioner perform that duty.

Finally, we consider the degree of impairment of the insurers' rights. The workers' compensation insurance business in which the insurers are engaged is an ongoing one involving billions of dollars in premiums. The statute affects only claims involving second injuries occurring before December 10, 1985. Full payment of those claims, for reasons we have just discussed, could not reasonably have been relied upon. Although the impact of the 1989 statute may have fallen disproportionately on some of the insurers, no showing of such disproportionate impact has been made with regard to any of the four insurers in this case. Moreover, perfection in carrying out a permissible legislative objective is not required. See *Selk* v. *Detroit Plastic Prods.*, 419 Mich. 1, 14 (1984).

We assume in this discussion that Shelby's and Central's claims reached the stage of binding enforceable contracts with the Commonwealth. We do not think those circumstances, however, put them in a significantly different position from that of the other claimants with respect to the validity of the statute. We are persuaded on the basis primarily of a consideration of the nature of the rights affected and the degree of their impairment that an insufficient showing has been made that the statute extinguishing the old second injury claims was unreasonable.

4. *The right of payment from the Commonwealth's general fund.* The insurers argue that, if their claims against the Trust Fund were extinguished by the 1989 statute, they still have the right to reimbursement contemplated by § 37 from

the Commonwealth. However, except for Merchants' claim regarding a payment to a disabled veteran based upon § 37A,[7] there is no basis for payment of the claims out of the Commonwealth's general fund. The various versions of the statutes at issue provide a scheme for spreading the risk of second injury claims, at one time among insurers, and, since the 1985 amendment, among employers. Section 37 claims, thus, have always been a private and not a public responsibility, and it was never contemplated that the general fund would be used to pay them. If the Legislature had so intended, it could have provided for such payments by using language similar to that used in § 37A. The Attorney General concedes, in his brief and at oral argument, that, in accordance with § 37A, the Commonwealth should be ordered to pay the Merchants' claim out of the general fund without the need for appropriation, and his concession binds the Commonwealth. See *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 567 (1976).

Accordingly, the Superior Court judgment in favor of Shelby is reversed, and judgment shall be entered for the Commonwealth. The decision of the reviewing board of the Department of Industrial Accidents in favor of the Trust Fund shall be affirmed. The single justice is to enter a judgment that the Commonwealth pay the Merchants' claim out of the general fund.

*So ordered.*

### APPENDIX.

(1) General Laws c. 152, § 37, as appearing in St. 1991, c. 398, § 71, provides:

> "Whenever an employee who has a known physical impairment which is due to any previous accident, disease or any congenital condition and is, or is likely to be, a hindrance or obstacle to his employment, and who, in the course of and arising out of his employment, receives a personal injury for which compensation is required

---

[7]See Appendix (2) to this opinion.

by this chapter and which results in a disability that is substantially greater by reason of the combined effects of such impairment and subsequent personal injury than that disability which would have resulted from the subsequent personal injury alone, the insurer or self-insurer shall pay all compensation provided by this chapter . . . .

"Insurers making payments under this section shall be reimbursed by the state treasurer from the trust fund created by section sixty-five in an amount not to exceed seventy-five percent of all compensation due . . . provided, however, that the insurer is not a self-insurer, a group self-insurer or municipality that has chosen not to be subject to the assessments which fund said reimbursements; and, provided, further, that no reimbursement shall be made for any amounts paid during the first one hundred and four weeks from the onset of disability or death.

"There shall be no reimbursement under this section unless the employer had personal knowledge of the existence of such pre-existing physical impairment within thirty days of the date of employment or retention of the employee by such employer from either a physical examination, employment application questionnaire, or statement from the employee."

Earlier versions of G. L. c. 152, § 37, appear in St. 1985, c. 572, §§ 48 & 49, and St. 1973, c. 855, § 2.

(2) General Laws c. 152, § 37A, as amended through St. 1973, c. 855, § 3, provides:

"Any employee who is a war veteran and disabled as the result of his military or naval service and has been certified as such by the United States Veterans Administration and who, in the course of and arising out of his employment, receives a personal injury which is aggravated or prolonged by such disability for which he is receiving compensation from said administration, shall receive the compensation provided by this chapter, or said compensation shall be paid to his dependents, if death results from the injury. Such compensation shall be paid by the insurer or self-insurer, who shall be reimbursed, in an amount not to exceed fifty per cent thereof for any period up to one hundred and four weeks and thereafter in an amount not to exceed one hundred per cent, by the state treasurer from the fund created by section sixty-five. In the event that said fund becomes exhausted, the state treasurer shall make such payments from the general fund without appropriation."

(3) General Laws c. 152, § 65(2), as appearing in St. 1991, c. 398, §§ 85-89, provides:

> "(2) There is hereby established a trust fund in the state treasury, known as the Workers' Compensation Trust Fund, the proceeds of which shall be used to pay or reimburse the following compensation: (a) reimbursement of adjustments to weekly compensation pursuant to section thirty-four B; (b) reimbursement of adjustments to weekly compensation pursuant to section thirty-five C; (c) reimbursement of certain apportioned benefits pursuant to section thirty-seven; (d) payment of vocational rehabilitation benefits pursuant to section thirty H; (e) payment of benefits resulting from approved claims against employers subject to the personal jurisdiction of the commonwealth who are uninsured in violation of this chapter; provided, however, that (i) the claimant is not entitled to workers' compensation benefits in any other jurisdiction; (ii) no benefits pursuant to section twenty-eight and no interest pursuant to section fifty shall be payable out of the trust fund; (f) reimbursement of benefits pursuant to section twenty-six; and (g) reimbursement of certain apportioned benefits pursuant to section thirty-seven A. No reimbursements from the Workers' Compensation Trust Fund shall be made under clauses (a) to (g), inclusive, to any non-insuring public employer, self-insurer or self-insurance group which has chosen not to participate in the fund as hereinafter provided . . . . Revenues for the special fund and the trust fund established herein shall be raised by an assessment on all employers subject to this chapter."

Earlier versions of G. L. c. 152, § 65, also provided for the reimbursement of benefits pursuant to § 37. St. 1985, c. 572, § 55, rewrote the section requiring payment to be made into the fund by insurers or self-insurers.